1997 ME 175

**MAINE GREEN PARTY**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued June 16, 1997

Decided Aug. 1, 1997.

---

Paul D. Manetti (orally), Greenberg & Greenberg, Portland, Susan J Parcels, Portland, for plaintiff.

Andrew Ketterer, Attorney General, H. Cabanne Howard, Asst. Atty Gen. (orally), Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

RUDMAN, Justice.

[¶ 1] Pursuant to 4 M.R.S.A. § 57 (1989) and M.R. Civ. P. 76B,[1] the United States District Court for the District of Maine (*Carter, J.*) has certified the following question of state law to this Court:

> Does 21–A M.R.S.A. § 301(1)(C) require that a political party which had qualified for official party status in Maine because its candidate for Governor received more than five percent (5%) of the vote in the last gubernatorial election be disqualified if its candidate for President at the next succeeding election fails to receive five percent (5%) of the presidential vote?

[¶ 2] We first note that there is no dispute as to the material facts at issue, there are no clear controlling precedents, and our answer would, in one alternative, be determinative of this case. Thus, our exercise of jurisdiction in this case is proper. *See League of Women Voters v. Secretary of State*, 683 A.2d 769, 771 (Me.1996); *Dasha v. Maine Med. Ctr.*, 665 A.2d 993, 995 (Me. 1995).

[¶ 3] In the 1994 election Jonathan Carter, a candidate for Governor of Maine after his nomination by petition, 21–A M.R.S.A. §§ 351–357 (1993 & Supp.1996), received more than five percent of the vote. As a result, during 1995 and 1996, pursuant to 21–A M.R.S.A. § 302 (1993),[2] the Maine Green

---

1. 4 M.R.S.A. § 57 (1989) provides in pertinent part:

    When it shall appear to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there are involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial

    Court sitting as a law court may, by written opinion, answer.

    M.R. Civ. P. 76B provides the procedural requirements for certifying questions.

2. 21–A M.R.S.A. § 302 (1993) provides:

    **Formation of new party; organization about a candidate**

    A party whose designation was not listed on the general election ballot in the last preceding gubernatorial or presidential election qualifies to participate in a primary election, if it meets the requirements of subsections 1, 2 and 3.

Party formed as a new political party. The Secretary of State recognized the Green Party as an official party in March 1996. It thus became eligible to nominate candidates for state and federal office in the 1996 election. The Green Party nominated Ralph Nader as its presidential candidate in the 1996 election. Nader received less than five percent of the vote in that election.

[¶ 4] Anticipating that the Secretary of State would disqualify it as a party pursuant to 21–A M.R.S.A. §§ 301, 304 & 305 (1993),[3] in November 1996 the Green Party filed a complaint in the United States District Court. It sought, among other things, a

1. **Declaration of intent.** A voter or a group of voters who are not enrolled in a party qualified under section 301 must file a declaration of intent to form a party with the Secretary of State before 5 p.m. on the 180th day preceding a primary election. The declaration of intent must be on a form designed by the Secretary of State and must include:

A. The designation of the proposed party;

B. The name of a candidate for Governor or for President in the last preceding gubernatorial or presidential election who was nominated by petition under [sections 351–357] and who received 5% or more of the total vote cast in the State for Governor or for President in that election;

C. The signed consent of that candidate; and

D. The name and address of the voter or one of the group of voters who file the declaration of intent.

2. **Enrollment of voters.** After filing the declaration described in subsection 1, the voter or voters proposing to form the party may then enroll voters in the proposed party under section 141 to 145.

3. **Municipal caucuses.** The proposed party must conduct municipal caucuses in at least one municipality in each of the 16 counties during that election year as prescribed in [sections 311–315]. The chairman of the municipal committee or a resident voter in the municipality must file a copy of the notice required by section 311, subsection 3, with the Secretary of State before 5 p.m. on April 15th.

4. **Convention.** A party which has qualified under subsection 1, 2 and 3 to participate in a primary election must, in that same year, hold a state convention, as prescribed by [sections 321 and 322], in order to have the party designation of its candidates printed on the ballot in the general election of that year. The voter or group of voters who file the declaration of intent may perform the duties of the state committee under section 321, subsection 1, for the party's initial convention.

3. 21–A M.R.S.A. § 301 (1993) provides:

declaratory judgment favorable to its position with respect to the meaning of 21–A M.R.S.A. § 301(1)(C): that the statute allows it to maintain qualified status because its gubernatorial candidate polled at least five percent of the vote in the last gubernatorial election. In accord with the parties' agreement, the court enjoined the Secretary of State from disqualifying the Green Party pending resolution of the action and certified the question at issue. We conclude that section 301(1)(C) requires the Green Party to be disqualified as a political party because its candidate polled less than five percent of the vote in the last general election, and accord-

**Qualified parties**

1. **Primary election.** A party qualifies to participate in a primary election if its designation was listed on the general election ballot in the last preceding gubernatorial or presidential election and if:

A. The party held municipal caucuses as prescribed by [sections 311–315] in at least one municipality in each county in the State during that election year and fulfills this same requirement during the year of the primary election;

B. The party held a state convention as prescribed by [sections 321 and 322] during that election year;

C. Its candidate for Governor or for President polled at least 5% of the total vote cast in the State for Governor or President in the last preceding gubernatorial or presidential election; and

D. Each state party committee must file a statement with the Secretary of State on or before April 4th certifying that the party has held the municipal caucuses required by paragraph A. The statement must be signed by the party chairman or his designated agent.

2. **General election.** A party which qualifies under subsection 1 to participate in a primary election must, in that same year, hold a state convention as prescribed by [sections 321 and 322] in order to have the party designation of its candidates printed on the ballot in the general election of that year.

21–A M.R.S.A. § 304 (1993) provides:

**Disqualification of parties**

A party which qualified under sections 302 or 303 to participate in the last preceding primary and general elections is not qualified to participate in a subsequent primary election unless it meets the requirements of section 301.

21–A M.R.S.A. § 305 (1993) provides:

**Secretary of State**

The Secretary of State shall determine whether or not a party has met the requirements of sections 301, 302 and 303.

ingly we answer the certified question in the affirmative.

## Statutory Construction

[¶ 5] The Green Party contends that the statute allows a political party to retain qualified status if either its gubernatorial candidate polled at least five percent of the vote in the last gubernatorial election, or its presidential candidate polled at least five percent of the vote in the last presidential election. Conversely, the State contends that the statute allows a political party to maintain qualified status only if that party's presidential or gubernatorial candidate polled at least five percent of the vote in the last biennial general election. Both parties contend that its position is supported by the plain language of the statute and is consistent with the overall statutory scheme.

■ [¶ 6] When faced with a question of statutory construction, we seek to discern the intent of the Legislature by examining the plain language contained in the statute and consider the particular language in the context of the whole statutory scheme. See, e.g., *State v. Butt*, 656 A.2d 1225, 1227 (Me. 1995); *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994); *Fraser v. Barton*, 628 A.2d 146, 148 (Me.1993); *Stanley v. Tilcon Maine, Inc.*, 541 A.2d 951, 952 (Me.1988). In the instant case, however, our review of the statutory language and statutory scheme governing elections, Title 21–A, provides little guidance in resolving the question presented. The statutory language could be construed to support either party's position. Further, a review of the statutory scheme reveals that either party's interpretation of the statute could lead to an illogical result.[4]

## Legislative History

■ [¶ 7] We turn next to the legislative history of the statute. Each party contends that the statute's history supports its respective interpretation. We find the interpretation propounded by the State to be more persuasive.

[¶ 8] The Statement of Fact accompanying a 1976 amendment that later became section 301 provides in pertinent part: "Under this section, a party that was on the ballot in the last general election could qualify again if . . . its candidate for Governor or President received at least 2% of the vote that year." Comm. Amend. A to L.D. 2140, Statement of Fact (107th Legis. 1976). The reference to the last general election in the statement of fact establishes that the Legislature intended that qualified political parties show the requisite support in each biennial general election, whether that election is for Governor or President.[5] The language adopted in

4. The Green Party contends that the political viability of a party is measured on a four-year cycle based on the statutory definition of "major party." A "major party" is defined as "a political party polling the greatest or the next greatest number of votes cast for Governor at the last gubernatorial election." 21–A M.R.S.A. § 1(22) (1993). Thus, major parties are defined on a four-year rather than a two-year cycle. Pursuant to 21–A M.R.S.A. § 103(1) (1993), in cities or towns with a population of 5,000 or more, the three-member local board of registration consists of one member of each of the two major parties and one member appointed by the municipal officers. Board members serve for a period of three years. *Id.* at § 103(3). Accordingly, the State's interpretation could lead to a situation in which, for a period of about one year, one or two members of a local board are members of a disqualified political party. Nevertheless, the Green Party's interpretation also leads to an illogical result. As a consequence of the Green Party's interpretation, the statute would allow a qualified party which runs a candidate for President not only to run another candidate for Presi-

dent four years hence, but the party would also be entitled to run candidates for the State Legislature, even if it ran no candidate for Governor in the intervening election (or its candidate did not receive 5% of the vote).

5. During the legislative debate on the bill, Representative Boudreau, who at that time was the House Chair of the Joint Standing Committee on Elections, also refers to the effects of the legislation in terms of the last general election:

Mrs. BOUDREAU: . . . .

. . . [T]he first procedure that can be used to organize a new party . . . is organization about a candidate. . . . [After meeting the statutory requirements] you proceed the same as either of the present parties do. . . .

. . . .

Okay, say you go through the election and in the general election your candidate or your party do not receive two percent of the vote. Then you have to start all over again.

. . . .

Mr. HEWES: . . . Does this have to be a statewide election . . . ?

the 1976 amendment is identical to the present language of section 301(1)(C).[6] 21–A M.R.S.A. § 301(1)(C) (1993); Comm. Amend. A to L.D. 2140, § 321(1)(C) (107th Legis.1976). We conclude, therefore, that the legislative intent behind the current statutory language remains as it was expressed in 1976.

[¶ 9] We are also persuaded by the fact that the Legislature has twice rejected proposals that would have amended section 301 in a way consistent with the Green Party's interpretation. In 1995 the Legislature considered and rejected a proposal that would have allowed a party to qualify to participate in a primary election if its designation was listed on the ballot in either of the last two preceding general elections and if its candidate for Governor or President polled at least five percent of the total vote cast for Governor or President in either of the last two preceding elections.[7] The Summary of the 1997 bill provides:

> This bill increases access to the ballot and other election processes for new parties, . . . as follows:
>
> 1. Modifies the frequency of the 5% vote requirement from the current 2–year cycle to a 4–year cycle. . . .

L.D. 1376, Summary (118th Legis.1997) (emphasis added). The defeat of the 1995 and 1997 bills provides strong support for the State's interpretation of section 301. *See Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 846, 106 S.Ct. 3245, 3254, 92 L.Ed.2d 675 (1986), (quoting *N.L.R.B. v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974) (footnotes omitted)) ("It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.' "); *Strickland v. Commissioner, Maine Dept. of Human Serv.*, 96 F.3d 542, 547 (1st Cir.1996) ("This combination congressional awareness of an existing administrative praxis coupled with a concomitant unwillingness to revise that praxis-strongly implies legislative approval."). In light of the clear statement of legislative intent and the subsequent actions of the Legislature, we conclude that section 301(1)(C) requires that a political party's candidate must poll five percent of the vote in the last biennial general election in order for the party to maintain qualified status.

[¶ 10] We answer the certified question in the affirmative.

---

. . . .
Mrs. BOUDREAU: . . . [I]t has to be a gubernatorial or presidential.
Legis. Rec. 648 (1976) (emphasis added).

**6.** With the exception that the amendment required a candidate to poll only two rather than five percent of the vote.

**7.** The 1995 proposed amendment to 21–A M.R.S.A. § 301(1)(C) provided:

> A party qualifies to participate in a primary election if its designation was listed on the ~~general election ballot in the last proceeding gubernatorial or presidential election~~ ballot in either of the last 2 preceding general elections and if:
> . . . .
> C. Its candidate for Governor or for President polled at least 5% of the total vote cast in

the State for Governor or President in ~~the last preceding gubernatorial or presidential election~~ either of the last 2 preceding general elections. . . .
Comm. Amend. A to L.D. 499, No. H–522 (117th Legis. 1995). The Statement of Fact to the amendment provided:

> The amendment . . . changes the requirements that a new party must meet in order to be a qualified party. Under current law the party must poll at least 5% of the total votes cast in each presidential and gubernatorial election in order to become and remain qualified. Under the proposed legislation, that party must poll 5% of the total votes cast in either of the last two preceding general elections.
> The purpose of the change is to remove the disadvantage to new parties who do not run both gubernatorial and presidential candidates.

*Id.* at Statement of Fact.