2002 ME 67

**Beverly GILBERT**

v.

**L. Kevin GILBERT**

v.

**Hanover Insurance Company.**

Supreme Judicial Court of Maine.

Argued: March 5, 2002.
Decided: April 18, 2002.

Janet T. Mills, Esq. (orally), Wright & Mills, P.A., Skowhegan, for plaintiff.

Leonard I. Sharon, Esq., Justin W. Leary, Esq. (orally), Sharon, Leary & De-Troy, Auburn, (for L. Kevin Gilbert), Gerard O. Fournier, Esq. (orally), Portland, (for Hanover Ins. Co.), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] L. Kevin Gilbert appeals from two summary judgments entered in the Superior Court (Franklin County, *Marden, J.*). One judgment is in favor of Beverly Gilbert, Kevin's former wife, in her action to recover insurance proceeds paid to the Gilberts after their home and its contents were damaged by a fire. Kevin contends that he is entitled to a portion of the proceeds attributable to those items of personal property that he owned. The second summary judgment was entered in favor of third-party defendant Hanover Insurance Company in Kevin's third-party action to recover additional proceeds that Kevin claimed were due under the policy. Finding no error, we affirm both judgments.

[¶ 2] Beverly and Kevin were divorced on March 31, 1998. The divorce judgment awarded the house, valued at $36,809, to Kevin, but allowed Beverly to remain in the house until July 27, 1998. The judgment ordered Kevin to pay Beverly $17,454 when she vacated the premises, to compensate her for her marital interest in the house. Beverly had the option of vacating the house prior to July 27, 1998, in which case Kevin would have thirty days to pay her the sum awarded to her.

[¶ 3] On May 31, 1998, while Beverly was still residing there, the house was struck by lightning, causing a fire that severely damaged the house and destroyed the personal property therein. Beverly immediately exercised her right to accelerate the payment due to her under the divorce judgment by informing Kevin of her intent to "vacate" the premises. Kevin fulfilled his obligation to Beverly for her equity on June 11, 1998.

[¶ 4] The Gilberts had a fire insurance policy on the house issued by Hanover.[1] One provision guaranteed that the owners would receive payments to provide them with a temporary residence if fire damage caused the house to be unlivable. That provision provided, in pertinent part:

> If a loss covered under this Section makes that part of the "residence prem-

---

1. Hanover Insurance Company is the successor-in-interest to Massachusetts Bay Insurance Company, which issued the policy and made the payments. For consistency, we refer to the insurance companies as "Hanover" throughout this decision.

ises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

   a. **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   b. **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or if you permanently relocate, the shortest time required for your household to settle elsewhere.

[¶ 5] The policy also insured against damage to personal property caused by fire up to $52,000 for the actual value of the property.[2] Sometime after the fire, Kevin renegotiated the policy to provide coverage of $62,400, with the damaged property to be valued at its replacement value. Hanover submitted an "Amended Declaration" to Kevin that indicated these changes in terms. The declaration stated that it was effective on June 29, 1998.

[¶ 6] Beverly filed a claim with Hanover for the damaged or destroyed personal property,[3] and Hanover immediately issued her a $5000 advance check payable to Beverly and Kevin. Kevin endorsed the check on the condition that $2000 of the $5000 be placed in an escrow account while he and Beverly tried to resolve who was entitled to the proceeds. They were unable to agree, however.

[¶ 7] Hanover issued two checks to the Gilberts totaling $52,338[4] on December 4, 1998. Like the advance check, these checks required the endorsements of both Gilberts. Kevin also refused to endorse these checks because he believed that he and Beverly were entitled to a larger payment from Hanover, and that endorsing the checks would be construed as a waiver or settlement of their claim. At some point during that summer, Hanover agreed to pay $2800 to the couple for the loss of use of the property for June, July, August, and September of 1998.

[¶ 8] Beverly filed a complaint against Kevin on May 13, 1999. Count I sought an injunction to require Kevin to sign the check so the court could place the money in trust pending a determination of who was entitled to it. Count II sought a declaratory judgment that Beverly was entitled to the full amount of the insurance proceeds.[5]

[¶ 9] On July 9, 1999, the court acted on Count I of Beverly's complaint and ordered that the insurance proceeds be placed in a trust account pending final outcome of the case.

---

2. *Insurance policies can value property either at its actual value or its replacement value. The former takes into account depreciation of the property, and usually results in a lower appraisal than replacement value.*

3. Beverly claimed that $94,000 worth of personal property was destroyed, which exceeded the policy limits.

4. This total constituted the maximum amount allowed under the policy, plus an inflation adjustment, minus the $5000 advance.

5. Beverly's complaint contained several counts seeking damages from Kevin, but the claims in those counts are not before us in this appeal.

[¶ 10] Pursuant to an order of the court, Kevin filed a third-party complaint against Hanover on January 4, 2000, seeking additional proceeds from Hanover for personal property damage. This claim was based on Kevin's allegation that Hanover had agreed that the amendments to the policy increasing coverage, negotiated after the fire, would apply retroactively to the effective date of the policy. Kevin also claimed that he was entitled to payments for living expenses from September of 1998 through January of 1999, which was when he asserts he was able to move into the house.

[¶ 11] Hanover moved for a summary judgment on the third-party complaint. Hanover contended that Kevin's assertion that the amendments were intended to be retroactive was unfounded, and that he was not entitled to any payments for "loss of use" because he did not reside in the house at the time of the fire. Beverly also filed a motion for a summary judgment on her complaint, contending that Kevin had failed to provide any evidence that items belonging to him were in the house at the time of the fire.

[¶ 12] The court ultimately concluded that the statement of material facts submitted by Kevin in response to Beverly's summary judgment motion failed to properly controvert Beverly's Rule 56(h) statement supporting her motion, which contended that she owned all the property destroyed by the fire, and accordingly, that Kevin did not generate an issue of material fact sufficient to defeat Beverly's motion for summary judgment. The court also concluded that the language of the insurance policy supported Hanover's contention that the amendment increasing the amount of coverage was not retroactive.

[¶ 13] The court further concluded that Hanover was obligated to make loss of use

payments to the Gilberts, and because Beverly had immediately exercised her option to vacate the premises, Kevin was not precluded by the policy language from receiving payments for loss of use.[6] The court refused to award Kevin loss of use payments in excess of the $2800 already paid by Hanover, however, concluding that the negotiated payment represented an agreement between the parties as to the time that would be required to repair the house within the meaning of the policy.

## I. SUMMARY JUDGMENT FOR BEVERLY GILBERT

[¶ 14] Rule 56(h)(2) provides:

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by paragraph (4) of this rule.

[¶ 15] "A statement of material facts must be numbered, concise, and contain specific record references to each *proffered fact.*" *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653, 656 (interpreting predecessor to Rule 56(h), but noting that requirements will remain the same under new rule). If a proffered fact is not accompanied by a specific rec-

6. Hanover's position is that the policy language requires that payments be made only to Beverly because she was the only party living in the residence at the time of the fire.

ord reference, then the court will not take cognizance of it. *Id.* at ¶ 9.

[¶ 16] The assertions as to the loss of personal property in the fire contained in Beverly's statement properly reference the record and support her motion for a summary judgment. The statement of material facts that Kevin filed in opposition to Beverly's motion contains six paragraphs of assertions and cross-references, but no record references. Because Beverly's statement of material facts is uncontroverted by Kevin, the court correctly entered summary judgment in favor of Beverly.[7]

## II. SUMMARY JUDGMENT FOR HANOVER INSURANCE COMPANY

### A. Retroactivity of the Amendment

[¶ 17] Kevin contends that the amendment to the policy increasing coverage for loss of personal property from $52,000 to $62,400 is retroactive to the date of the original policy, prior to the fire, and that he generated an issue of material fact as to whether the amendment was retroactive. His statement of material facts in opposition to Hanover's motion asserts that the terms of the amendment "indicate[ ] that the limit was $62,400 at the time of the fire."

[¶ 18] Insurance policies are contracts, and are construed in accordance with the intent of the parties. *Apgar v. Commercial Union Ins. Co.,* 683 A.2d 497, 498 (Me.1996). If policy language is unambiguous, then the court must adhere to that language. *Id.* The "Amended Declaration" unambiguously states that it became effective on June 29, 1998, which was after the fire. Because the policy language is unambiguous, Kevin's mistaken understanding of the terms of the policy does not generate a genuine issue of *material* fact.[8]

### B. Kevin's entitlement to Loss of Use

[¶ 19] Hanover contends that Kevin was entitled to no payments for loss of use of the property following the fire,[9] and Kevin contends that the loss of use payments awarded to him were insufficient. The policy guaranteed that Hanover would pay the insured for loss of use "[i]f a loss covered under this Section makes that part of the residence premises *where you reside* not fit to live in." (Emphasis added.) On May 31, 1998, Beverly was living in the house. After the fire she exercised her right to demand that Kevin immediately purchase the house. Once Kevin did this in mid-June of 1998, he legally assumed full title to and possession of the house.

---

7. Kevin also includes in the first paragraph of his statement of material facts a cross-reference to the statement of material facts that he submitted in response to Hanover's motion for summary judgment. That statement did contain adequate record references for each proffered fact, but the proffered facts in that statement would not defeat Beverly's motion for a summary judgment. In order to be entitled to any of the proceeds, Kevin had to own some of the property in the house. None of the facts asserted in the statement of material facts Kevin submitted in opposition to Hanover's motion contradicted Beverly's assertion that she owned all the property in the house at the time of the fire.

8. Kevin also argues that the terms of the amendment are ambiguous about whether its effective date was retroactive, but this argument is unpersuasive. The amendment plainly states that it would become effective on June 29, 1998.

9. Hanover did not file a cross-appeal from the judgment below, and does not argue that it should recover the $2800 it paid to the Gilberts that ultimately was awarded to Kevin. Its contention is that Kevin was entitled to *no* payments for loss of use, and thus he cannot recover more than what was already paid.

Kevin asserts that he would have moved into the house immediately had it not been rendered unlivable by the fire, so that he was entitled to payment from Hanover for "loss of use." [10] Hanover argued that the language of the policy clearly indicates that the person entitled to "loss of use" payments is the person who was actually residing in the house *at the time of the accident.*

 [¶ 20] While the trial court agreed with Kevin that he became entitled to loss of use payments as soon as he acquired an interest in the house, it concluded that Kevin took an unreasonable amount of time to renovate the house. Policy provisions for loss of use payments were "for the *shortest time required* to repair or replace the damage." (Emphasis added.)

[¶ 21] Although the court found Kevin entitled to loss of use proceeds once Beverly vacated the house, he failed to present evidence in his opposition to Hanover's summary judgment motion sufficient to establish that the four months (the time for which Hanover paid the Gilberts proceeds for the loss of use) was not a reasonably sufficient time in which to complete the repairs. Thus, the court did not err in entering a summary judgment in favor of Hanover.

The entry is:

Judgment affirmed.

---

**10.** In this particular case, "loss of use" refers to money to pay for temporary housing while the fire damaged house is being repaired or replaced.