2002 ME 146

**NORTH RIVER INS. CO.**

v.

**Denzil SNYDER et al.**

Supreme Judicial Court of Maine.

Argued: May 7, 2002.

Decided: Aug. 27, 2002.

Peter A Muhic, (orally), Cozen & O'Connor, Philadelphia, PA, William C. Nugent, Portland, for plaintiff.

Thomas S. Marjerison, (orally), Aaron K. Baltes, Norman, Hanson & DeTroy, LLC, Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The United States District Court for the District of Maine (*Hornby, C.J.*) has certified[1] the following question:

---

1. Appellate rule 25, which governs certified questions provides:

When it shall appear to the Supreme Court of the United States, or to any of the Courts of Appeals or District Courts of the United States that there are involved in any proceeding before it one or more questions of law of this State which may be determinative of the cause and that there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may, upon its own motion or upon request of any interested party, certify such questions of law of this State to the Su-

"May a residential tenant be liable in subrogation to the insurer of a landlord for damages paid as a result of fire, absent an express agreement to the contrary in a written lease?" We answer the question as follows: No, a residential tenant may not be held liable in subrogation to the insurer of the landlord for damages paid as a result of a fire, absent an agreement to the contrary—that is, absent an express agreement in the written lease that the tenant is liable in subrogation for fire damage to the apartment complex.

## I. BACKGROUND

[¶ 2] Denzil and Candice Snyder rented an apartment, pursuant to a written lease, at the Cortland Apartment Complex in South Portland in 1998, and independently obtained a "homeowners" insurance policy for coverage of their personal property as well as $300,000 in liability protection. The Snyders received a reduced rent because Candice worked as a leasing agent for the landlord, which involved meeting with new tenants to review the terms of the standard lease agreement. The owner of the apartment, Cortland Associates, was insured for fire and casualty losses by North River Insurance Company. The Snyders are not listed as named insureds in the insurance contract between Cortland and North River Insurance.

[¶ 3] In 1999 a fire at the apartment complex caused significant damage. North River Insurance alleges that the Snyders' babysitter was smoking on the Snyders' deck shortly before the fire began, and that the fire department determined that the fire was caused by her careless discarding of a cigarette.[2]

[¶ 4] Cortland recovered approximately $230,000 from North River Insurance, and North River filed a subrogation claim against the Snyders in federal court alleging that it suffered damage due to the Snyders' negligence and breach of their lease with Cortland. The Snyders moved for a summary judgment contending that North River's subrogation[3] claim was barred because the Snyders were "co-insureds" under the policy North River provided to Cortland.[4]

[¶ 5] The Magistrate Judge (*Cohen, M.J.*) agreed with the Snyders and recommended that a summary judgment be granted because, as a matter of law, they were "implied" co-insureds under the landlord's insurance policy with North River Insurance, and therefore could not be sued in subrogation (citing, inter alia, *Sutton v. Jondahl,* 532 P.2d 478 (Okla.Ct.App.1975)). The court premised its decision on the likelihood that "the Maine Law Court would adopt the *Sutton* doctrine," yet recognized that "[t]here are no clear controlling precedents on this point in the deci-

preme Judicial Court sitting as the Law Court, for instructions concerning such questions of state law.
M.R.App. P. 25(a).

2. The Snyders do not concede either of these factual assertions in their brief, and the federal court particularly noted in its decision that the Snyders disputed the fire department's conclusion about the cause of the fire.

3. Subrogation is defined as "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured

with respect to any loss covered by the policy." BLACK'S LAW DICTIONARY 1440 (7th ed.1999).

4. The Snyders also contended North River's claim was barred because the lease allocated the risk of fire damage to Cortland; North River could not show that they were negligent; North River could not show that they were vicariously liable for any negligence of the babysitter; and North River could not show that they had breached the lease agreement.

sions of the Law Court."[5] The magistrate concluded that certification would be appropriate to answer the question of a residential tenant's liability to the landlord's insurer for fire damage to the apartment complex, in the absence of an express agreement that informed the tenant that he would be liable in subrogation. The United States District Court agreed that the question should be certified.

## II. DISCUSSION

### A. Answering the Question

[¶ 6] Before addressing the merits, we assess the appropriateness of answering the certified question pursuant to 4 M.R.S.A. § 57 (Supp.2001) and M.R.App. 25(a).

[¶ 7] Both 4 M.R.S.A. § 57 and M.R.App. P. 25(a) provide that the federal courts may certify "one or more questions of law of this State, which may be determinative of the cause, [if] there are no clear controlling precedents in the decisions of the Supreme Judicial Court ...." Our decisions reflect the added requirement that there be no dispute as to the material facts associated with the potentially determinative question or questions presented by the certification. *See, e.g., Me. Green Party v. Sec'y of State,* 1997 ME 175, ¶ 2, 698 A.2d 516, 517 (declaratory judgment action in which sole issue in dispute was meaning of statute governing disqualification of political party from official party status in Maine); *Dasha v. Me. Med. Ctr.,* 665 A.2d 993, 995 (Me.1995) (medical malpractice action in which certified question relates

only to the statute of limitations and not to the issue of liability).

[¶ 8] Here, there is no dispute as to the material facts associated with the question of whether a residential tenant can be liable in subrogation to the insurer of a landlord for damages paid as a result of a fire, absent an express agreement establishing such liability in a written lease. The decision of the Magistrate Judge which was affirmed by Order of the District Court establishes that there is no factual dispute as to the existence of a landlord/tenant relationship between Cortland Associates and Denzil and Candice Snyder; that North River Insurance paid damages to Cortland Associates as a result of a fire which started at the rental apartment leased by the Snyders; that there is no express provision in the written lease executed by Cortland Associates and the Snyders by which the Snyders can be held liable in a subrogation claim brought by the landlord's fire insurance carrier; and that North River has brought an action for damages against the Snyders based upon subrogation. It is also undisputed that there are no clear controlling precedents on the *Sutton* doctrine in Maine, and our answer will, in one alternative, be determinative of the case.

[¶ 9] The existence of disputed facts with respect to separate issues not raised by the certified question which are themselves potentially determinative of the underlying action does not render it inappropriate for this Court to address the question or questions presented. The "[e]xercise of our jurisdiction is proper ... [if] there are no clear controlling prece-

5. This Court has addressed subrogation albeit in a different capacity; we recognized that "allocation of risks to insurers through waivers of subrogation are encouraged by law [because a waiver] anticipate[s] risks [which] thereby avoid[s] future litigation." *Acadia Ins. Co. v. Buck Constr. Co.,* 2000 ME 154,

¶ 18, 756 A.2d 515, 520 (examining a construction contract); *see also Willis Realty Assocs. v. Cimino Constr. Co.,* 623 A.2d 1287, 1289 (Me.1993) (recognizing that the unambiguous construction contract barred subrogation recovery).

dents and our answer will, in one alternative, be determinative of the case. *Dasha,* 665 A.2d at 995. To hold otherwise would mean that we would answer certified questions only if they are the *exclusive* determinative questions generated by the case." Such a restrictive view is inconsistent with the text and purpose of 4 M.R.S.A. § 57 and M.R.App. P. 25(a).

[¶ 10] The resolution of the factual dispute regarding responsibility for the fire that destroyed the Snyders' apartment is not required to resolve the question of law presented to us. The threshold question of whether subrogation applies rests upon the nature and terms of the relationships between the landlord and the tenant, and the landlord and its insurer. The answer to this important threshold question need not be deferred pending the resolution of the secondary question of who is responsible for the fire. We therefore conclude that our exercise of jurisdiction is appropriate in this case.

## B. The Merits

[¶ 11] North River argues that we should decline to adopt the so-called *Sutton* rule because it abrogates the terms of the insurance contract between the landlord and North River, and that tenants should be liable for their negligence. The Snyders argue that the "implied co-insured doctrine" is a sound, equitable rule, which explains why the majority of jurisdictions have adopted it.

[¶ 12] The "implied co-insured doctrine" [6] emerged in *Sutton*. The court held: "[S]ubrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance." *Id.* at 482.

[¶ 13] In *Sutton* the tenant's son started a fire by misusing his chemistry set; the insurance company covered the landlord's $2,383 loss and then, as subrogee, brought suit against the father and son. *Id.* at 479. The insurer alleged "that the father contributed to the cause of the fire by breaching a duty to prohibit his son from carrying on unsupervised chemical experiments." *Id.* The court's decision was driven by its understanding that subrogation, as an equitable remedy, places the burden of loss where it ought to be—"it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability." *Id.* at 482. The court reasoned that (1) "both [the] landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest"; (2) the landlords purchased fire insurance to "protect such interests . . . [a]s a matter of sound business practice the premium paid had to be considered in establishing the rent rate"; and (3) it follows that "the tenant actually paid the premium as part of the monthly rental." *Id.*

[¶ 14] The court noted that the landlord *could* have contracted for the tenant to buy fire insurance; the landlord, however, elected to purchase the insurance:

> To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire insurance for the realty (as distinguished from personal property) absent an agreement other-

---

**6.** Courts consider the tenant an implied co-insured for the "limited purpose" of subrogation. *GNS P'ship v. Fullmer,* 873 P.2d 1157, 1162 (Utah Ct.App.1994) (citing *United Fire & Cas. Co. v. Bruggeman,* 505 N.W.2d 87, 89 (Minn.Ct.App.1993)).

wise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and he would need to take out another fire policy .... Perhaps this comes about because the companies themselves have accepted coverage of a tenant as a natural thing.

*Id.* Finally, the court articulated that the insurance company

> should not be allowed to shift a fire loss to an occupying tenant *even if . . . negligently caused....* For to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord.

*Id.* (emphasis added).

[¶ 15] Jurisdictions adopting *Sutton* do not agree *in toto* with the foregoing but advance alternative justifications for the rule. For example, the Supreme Court of Connecticut in *DiLullo v. Joseph,* 259 Conn. 847, 792 A.2d 819, 823 (2002), in a commercial lease[7] situation, applied the *Sutton* rule because it disfavored economic waste. The court declared that allocating responsibility to the tenant to maintain sufficient insurance in anticipation of a subrogation claim is untenable: "Such a rule would carry a strong incentive for every tenant to carry liability insurance in an amount necessary to compensate for the value, or perhaps even the replacement cost, *of the entire building,* irrespective of the portion of the building occupied by the tenant." *Id.* at 822–23 (emphasis added). Without the *Sutton* rule, two policies of insurance would be purchased for the same insurable interest, and the "waste would be compounded by the number of tenants." *Id.* at 823.[8] *See also GNS P'ship,* 873 P.2d at 1164 (holding that a tenant is presumed to be a coinsured absent an agreement to the contrary because "[t]his presumption is the most efficient way to allocate insurance costs").

■ [¶ 16] For residential tenants, we agree with the rationale advanced in the *DiLullo* opinion. When the lease does not contain an express agreement addressing the issue of subrogation in the event of a negligently caused fire by a tenant, as the magistrate found in this case,[9] a landlord's

---

7. Generally, *Sutton* has been applied to commercial and residential leases. *But see Seaco Ins. Co. v. Barbosa,* 435 Mass. 772, 761 N.E.2d 946, 950 (2002) (recognizing that while courts have not distinguished between commercial and residential tenancies in applying *Sutton,* commercial tenancies present different considerations, for "[c]ommercial tenants tend to be more sophisticated about the terms of their leases and, unlike residential tenants, commercial tenants generally purchase liability insurance"; thus, commercial tenants will be relieved of liability for negligently caused fire damage only if the lease reveals the parties so intended).

8. Whereas the *DiLullo* court's opinion primarily emphasized the economic waste rationale, it also noted that tenants do not "ordinarily expect" the landlord's insurer would

proceed against them (unless there is a *specific* agreement that it can). 792 A.2d at 823. Thus, barring subrogation "comports with the equities of most situations." *Id.*

9. The magistrate decided that the lease did not "mention insurance and cannot be construed as express agreements concerning insurance or liability for fire damage in particular." Our assessment of the lease terms, an implicit subpart of the certified question, coincides with the preceding. The lease does not contain a specific, express agreement that the Snyders would be liable in subrogation for fire damage. The lease provided in part:

> CASUALTY AND EMINENT DOMAIN: If a substantial part of the Apartment or Building is damaged by fire or other disaster, or taken by eminent domain, the Landlord may terminate this Lease within thirty (30)

insurer may not proceed against the tenant as subrogee.

The entry is:

The certified question is answered in the negative.

ALEXANDER, J., with whom RUDMAN, J., joins, dissenting.

[¶ 17] I respectfully dissent. The question posed to us by the Federal Court is equivalent to asking a damages question before liability has been decided. The legal question may be interesting, but the liability ruling may render it irrelevant to the case at hand. We are not obligated to answer every interesting question of Maine law that litigants raise in Federal cases. We should be particularly cautious about doing so when our answer would establish a major new policy governing interpretation of residential leases in a case where the facts and the terms of the lease may make any answer we give superfluous.

[¶ 18] Our authority to respond to questions from the Federal Courts is strictly limited by statute and our own precedents. Thus, our jurisdictional statute, 4 M.R.S.A.

days after the event by giving notification to the Tenant fifteen (15) days in advance.... In the case of a fire or casualty, the Resident must look to its own insurance company if the Resident's personal property is damaged....
TENANT: SUBJECT TO APPLICABLE LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF RELOCATION OF THE RESIDENT IF DISPLACED BY FIRE OR DAMAGES RESULTING FROM FIRE.
This merely informs the tenant that if he wants his personal property protected in the event of a fire, he should get his own insurance because the landlord will not cover such losses. Furthermore:
REPAIR AND MAINTENANCE: All maintenance requests must be called into the rental office .... Both the Landlord and the Resident have responsibility for the repair and maintenance of the Apartment. If the Landlord permits the Resident to install the Residents own equipment, such as refrigerators, dishwashers, stoves, and electrical fixtures, the Resident must properly install and maintain the equipment and make all necessary repairs. The Resident is also required to keep all toilets, wash basins, sinks, showers, bathtubs, stoves, refrigerators, and dishwashers in a clean and sanitary condition. The Resident must exercise reasonable care to make sure that these facilities are properly used and operated. In general, the Resident will be responsible for any defects resulting from abnormal conduct by the Resident, which includes any damages or deterioration as a result of negligence, carelessness, accident or abuse of the premises by the Resident or members of his/her household, invitees or guests. Whenever the Resident uses the Apartment or any other part of the Building, the Resident must exercise reasonable care to avoid damage to floors, walls, doors, windows, ceiling, roof, staircases, porches, chimneys, or other structural parts of the building.... If the Landlord ever notices that the Resident is not properly maintaining the Apartment or is otherwise failing to comply with the Resident's obligations under this Lease, the Landlord has the right to correct the problem and charge the Resident for any reasonable costs which the Landlord incurs in so doing.
TENANT'S RESPONSIBILITY: The Resident is responsible for the conduct of any and all family members, friends, relatives, delivery personnel, guests and other persons who are invited or allowed by the Resident to be on the Landlord's property. The Resident must make sure that these persons conduct themselves properly and do not violate any provisions of this Lease. Whenever the Landlord has to pay any expense, or suffers any loss, because of anything done by the Resident or any other person mentioned in this paragraph, the Resident must promptly provide full reimbursement to the Landlord.
Although to a varying degree the lease makes the tenant liable to the landlord for damages caused by the tenant or guest, none of the preceding provisions explicitly make the tenant liable to the landlord's insurer in subrogation as required by *Sutton.*

§ 57 (Supp.2001), limits our authority to answering "questions of state law" that in the Federal Court's view "may be determinative of the cause." We have interpreted section 57 to authorize our exercise of jurisdiction only if: (1) there is no dispute as to the material facts at issue; (2) there are no clear controlling precedents; and (3) our answer, in one alternative, would be determinative of the case. *Me. Green Party v. Sec'y of State,* 1997 ME 175, ¶ 2, 698 A.2d 516, 517; *League of Women Voters v. Sec'y of State,* 683 A.2d 769, 771 (Me.1996).

[¶ 19] The Court's opinion and the Magistrate Judge's decision recognize that the cause of the fire, and thus the Snyder's responsibility, is contested. The Magistrate Judge could not resolve that basic contested fact at the summary judgment stage because, as the Magistrate Judge noted, "[n]either party includes in their respective statements of material facts the basic facts giving rise to this action ...." The Court cannot determine that the material facts at issue are not in dispute when the record lacks "the basic facts giving rise to this action." In summary judgment practice, courts may not consider facts except those that appear with proper record references in statements of material fact. D. Me. Local R. 56(e); *Johnson v. McNeil,* 2002 ME 99, ¶ 8, 800 A.2d 702, 704; *Gilbert v. Gilbert,* 2002 ME 67, ¶ 15, 796 A.2d 57, 60–61.

[¶ 20] Resolving the contested issue of responsibility is an unavoidable prerequisite to addressing legal doctrines of subrogation. Before factual responsibility is resolved, argument about subrogation can only be in the abstract. With this central material fact unresolved, our case law, if we follow it, appears to bar answering the certified question.

[¶ 21] Even if the Snyders are ultimately found to be responsible for the fire, their financial responsibility to North River is resolvable by application of accepted doctrines of contract interpretation to the Snyders' lease contract. Paragraph 16 of the lease specifies that: (1) the Snyders are "responsible for the conduct" of anyone whom they invite or allow to be on the premises, and (2) "[w]henever the landlord has to pay any expense or suffers any other loss, because of anything done by the Resident or any other person ... the resident must promptly provide full reimbursement to the Landlord."

[¶ 22] The Magistrate Judge's decision suggests that because this indemnification clause does not mention insurance, it does not address subrogation and thus generates the *Sutton* issue. That is cutting the analysis a bit too fine. The Court acknowledges that the Snyders had liability insurance. It would appear that the parties to the lease contemplated tenant responsibility. The Court's imposition of a requirement that subrogation and indemnification is waived if the tenant is insured, unless the indemnification clause addresses insurance and allows subrogation, cuts the analysis even finer.

[¶ 23] The First Circuit, the relevant authority governing this case, has observed that "[i]t is black-letter law that the meaning of an unambiguous writing must be derived exclusively from within its four corners." *Elliott v. S.D. Warren Co.,* 134 F.3d 1, 9 (1st Cir.1998) (citing our opinion in *Portland Valve, Inc. v. Rockwood Sys. Corp.,* 460 A.2d 1383, 1387 (Me.1983)). Here, the indemnification clause, paragraph 16, is clear and unambiguous. It can be interpreted, within the four corners of the contract, without resort to extrinsic evidence or doctrines of interpretation applied to ambiguous contracts. The Magistrate Judge did not interpret the indemnification clause or the lease as a whole but moved directly to *Sutton.*

[¶ 24] The Snyders appear to argue that because they are insured, the indemnification clause should be ignored and, under *Sutton,* the landlord's insurance company should be required to pay for any insured damages the Snyders may cause to the landlord's property. However, as with the liability issue, the *Sutton* issue could and should only be reached after it is determined that the indemnity clause is ambiguous and does not, within its four corners, resolve the question of whether the tenants are responsible to pay for losses that they or their invitees cause to the landlord—whether the tenants are insured or not.

[¶ 25] The prerequisites to answering the certified question, established by our own recent precedent, have not been met: (1) there cannot be "no dispute as to the material facts" when our record lacks "the basic facts giving rise to this action"; (2) the governing law is clear; any obligation of the Snyders is established by reading the plain language of their lease, interpreted according to well established principles of contract interpretation; and (3) our decision will be determinative of nothing unless the disputed facts are decided against the Snyders and their lease is interpreted contrary to its plain meaning.

[¶ 26] On this limited record of disputed facts, we should be prudent and decline to answer a question with major policy implications for landlord/tenant contractual relations. I would decline to answer the certified question and leave to our Legislature the question of tenant responsibility for damage to landlord property for which the landlord is insured.