2011 ME 95

MIDDLESEX MUTUAL ASSURANCE COMPANY

v.

MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 43.

Supreme Judicial Court of Maine.

Argued: Jan. 12, 2011.

Decided: Aug. 25, 2011.

Jeffrey T. Edwards, Esq. (orally), Preti Flatherty Beliveau & Pachios, LLP, Portland, ME, for Middlesex Mutual Assurance Company.

Michael E. Saucier, Esq., Sarah Yantakosol Gayer, Esq. (orally), Thompson & Bowie, Portland, ME, for School Administrative District No. 43.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] The appeal in this subrogation action presents the question of whether negligent conduct by students that causes damage to a motel where the students were lodging while competing in a school-supported event renders the students' school district liable to repay the motel's insurance company for the damages caused by the students. We hold that because the school district did not undertake to be responsible to pay damages in a

subrogation action, the insurer's action against the school district is barred. Accordingly, we affirm the judgment of the Superior Court.

[¶ 2] Middlesex Mutual Assurance Company, the property insurer for the Sanford Super 8 Motel, appeals from the judgment of the Superior Court (York County, *Fritzsche, J.*) granting Maine School Administrative District No. 43's (MSAD 43) motion for summary judgment. Middlesex contends that the court erred in granting summary judgment because MSAD 43 violated an implied contractual obligation, enforceable in this subrogation action, to pay damages when student wrestlers from MSAD 43 negligently damaged the motel property. Middlesex also argues that the court erred in restricting its ability to conduct pretrial discovery, including its ability to depose one of MSAD 43's employees, in its action against MSAD 43.

## I. CASE HISTORY

[¶ 3] The following facts are supported by the record. Middlesex Mutual Assurance Company is the property insurer for the Sanford Super 8 Motel. On January 2, 2009, the wrestling coach for MSAD 43 rented several rooms at the motel on behalf of MSAD 43's wrestling team, which was participating in a tournament in the area. The coach signed a "Super 8 Reservation/Guest Room receipt." The relevant portions read:

> I AUTHORIZE ALL CHARGES RELATED TO MY STAY TO BE CHARGED TO MY CREDIT CARD. ALSO IF STAYING IN A NON SMOKING ROOM, SMOKING IS PROHIBITED. THERE WILL BE A CHARGE OF $100 IF WE FIND EVIDENCE OF SMOKE. PLEASE SIGN HERE TO ACKNOWLEDGE OUR NON SMOKING POLICY.

Also printed on the receipt is a notice, which reads:

> This franchised hotel is independently owned and operated. You agree personally to pay all charges incurred during your stay, in advance if asked, even if your credit card or billed party doesn't pay [the] hotel, abide by posted procedures for safekeeping valuables and house rules and vacate by departure date and time above. Hotel may refuse service and is not responsible for property damage or loss. Your party assumes all risks of personal injury unless caused by hotel's sole negligence. Notify the front desk of any special assistance needs.

[¶ 4] Nothing in the contract addressed the MSAD 43's responsibility to the motel's insurer in a subrogation action for any damage the room occupants might cause. The coach did not sign any other documents when he signed in to the motel.

[¶ 5] Four members of MSAD 43's wrestling team stayed in room 216. At some point that night, the team members in room 216 turned on the shower, blocked the ventilation system, and used the motel's hairdryer to create a makeshift sauna to help one of their teammates "make weight" for the next day's match. As a result of the students' actions, the motel's sprinklers activated.

[¶ 6] Middlesex paid out $10,693.68 to repair the damage caused by the students' actions. It then exercised its right of subrogation pursuant to its insurance contract with the motel to seek to recover compensation from those responsible for the loss.

[¶ 7] Middlesex filed a complaint against MSAD 43, alleging that MSAD 43 is liable "for breach of contract, based upon [MSAD 43's] failure to protect and safeguard the property from damage during the period of occupancy and to refrain

from activities that would damage the property." Because the Maine Tort Claims Act, 14 M.R.S. §§ 8101–8118 (2010), effectively bars any tort-based claims against MSAD 43, Middlesex, appropriately, is not asserting any tort-based claims, such as negligence or negligent supervision, in this action against MSAD 43.

[¶ 8] MSAD 43 answered Middlesex's complaint and asserted several defenses. Four of MSAD 43's affirmative defenses rest on the Maine Tort Claims Act, 14 M.R.S. §§ 8103, 8104, 8105, 8107, 8113, 8116.[1] MSAD 43 also denied any responsibility for the damages caused and disavowed any negligence in the incident. MSAD 43 claimed that Middlesex had failed to state a claim upon which relief may be granted, that it was "not subject to respondeat superior or agency liability," and that Middlesex was barred from recovering from MSAD 43 in this subrogation action.

[¶ 9] Middlesex filed a discovery request, asking MSAD 43 to produce all documents that would support MSAD 43's defenses. MSAD 43 filed a motion for summary judgment, supported by documents, including two affidavits, the check MSAD 43 used to pay for the rooms, the printout the coach signed at the motel, a Sanford Police Department report, and a printout of the "limits of liability" as promulgated by MSAD 43's own insurance carrier, Argonaut Group. MSAD 43 alleges that "[n]one of the documents attached to [Middlesex's] Complaint establish a contractual obligation to safeguard and protect property during the occupancy of Room 216."

[¶ 10] Middlesex sought to depose the coach and a representative from MSAD 43.

MSAD 43 objected. Following a telephonic hearing the court ruled:

> [A]s it does not appear that either the wrestling coach or a representative of the school district can provide any information regarding the nature of and terms of any contract between the motel and the district[,] their depositions will not be held. The documents concerning a contract have already been disclosed and the remaining issues are best dealt with through briefs.

[¶ 11] After the court granted MSAD 43's motion for summary judgment, Middlesex brought this appeal.

## II. LEGAL ANALYSIS

[¶ 12] We review a ruling on a motion for summary judgment de novo. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. Summary judgment is appropriate when the parties' statements of material facts and the record evidence to which the statements refer, considered in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact that is in dispute and the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733; *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821.

[¶ 13] Middlesex argues that MSAD 43 "is liable for the damage to the [m]otel property, on the basis of breach of contract because there was an implied obligation to protect and safeguard the motel's property." There is no express provision in the document the coach signed that would give rise to contractual liability of the type alleged by Middlesex. Because there is no express contract, what Middlesex really contends is that a rental con-

---

1. MSAD 43's claims that this action is barred by the Maine Tort Claims Act are off point.

The Maine Tort Claims Act is inapplicable to actions based on contract.

tract for a hotel room, without any express term in the room rental, includes, as a matter of law, terms that: (1) the room occupant, or the person who pays for the room, is responsible for any damages caused by negligent use of the room; and (2) the hotel's insurer may bring a subrogation action against the room occupant or person responsible for payment to collect such damages.

[¶ 14] The motel itself initiated no negligence action against the individuals whose negligence caused the damage. Instead, consistent with common business practice, the motel's insurer paid the claim, and then, pursuant to the subrogation clause of its insurance contract with the motel, assumed the motel's claim and sued MSAD 43.

[¶ 15] We addressed such a claim in *North River Insurance Co. v. Snyder*, a subrogation action, much like the action here, in which a property owner's insurer brought a subrogation action against a tenant for fire damage caused by the tenant's babysitter's negligent disposal of a cigarette. 2002 ME 146, ¶¶ 3, 4, 804 A.2d 399. In *North River*, we held that "[w]hen the lease does not contain an express agreement addressing the issue of subrogation in the event of a negligently caused fire by a tenant, . . . a landlord's insurer may not proceed against the tenant as subrogee." *Id.* ¶ 16.

[¶ 16] *North River* was before us on a question certified by the United States District Court that posed the following question: "May a residential tenant be liable in subrogation to the insurer of a landlord for damages paid as a result of fire, absent an express agreement to the contrary in a written lease?" *Id.* ¶ 1. We answered the question as follows: "No, a residential tenant may not be held liable in subrogation to the insurer of the landlord for damages paid as a result of a fire,

absent an agreement to the contrary—that is, absent an express agreement in the written lease that the tenant is liable in subrogation for fire damage to the apartment complex." *Id.*

[¶ 17] Our reasoning for that result followed substantial precedent in other states indicating that insurance companies, in subrogation actions, would not be allowed to shift a loss to a premises occupant, absent an express agreement by the premises occupant. We observed that even if the occupant negligently caused the damage, the occupant was considered a co-insured of the property owner, absent an express agreement to the contrary, because the occupant had effectively purchased the insurance to protect the property as part of the rent payment, and, as a matter of economic efficiency, both owner and occupant should not be required to purchase insurance to cover the same risk. *Id.* ¶¶ 12–16 (*citing DiLullo v. Joseph*, 259 Conn. 847, 792 A.2d 819, 822–23 (2002); *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1162, 1164 (Utah Ct.App.1994); *Sutton v. Jondahl*, 532 P.2d 478 (Okla.Civ.App. 1975)). *See also Rausch v. Allstate Ins. Co.*, 388 Md. 690, 882 A.2d 801, 808–14 (2005) (surveying precedent regarding occupant responsibility in subrogation actions).

[¶ 18] Respecting our jurisprudence regarding the circumstances in which a subrogation action may be brought against a premises occupant for negligent damage to a premises, there is no basis to import into this contract MSAD 43's assumption of liability in the subrogation action for damages arising from tortious acts for which Middlesex seeks recovery.

[¶ 19] The Superior Court did not err in granting summary judgment.

[¶ 20] Because summary judgment was appropriately granted as a matter of law,

we need not address the separate discovery issue, other than to observe that the issues upon which discovery was sought could not have informed the legal issues which support our decision.

The entry is:

Judgment affirmed.