ENTERED NOV 2 5 2014 *me*/

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-13-386
$JAW-CUM-11-17-14$

CAMBRIDGE MUTUAL FIRE
INSURANCE COMPANY A/S/O
NICHOLAS AND PAULA PORTLOCK,

    Plaintiff,

    v.

GRANITE BAY CARE, INC.,

    Defendant.

ORDER ON MOTION
FOR SUMMARY
JUDGMENT

STATE OF MAINE
Cumberland, ss, Clerk's Office

NOV 17 2014

RECEIVED

This matter is before the court on defendant Granite Bay Care Inc.'s motion for summary judgment. For the following reasons, the motion is granted.

## BACKGROUND

Plaintiff Cambridge Mutual Fire Insurance Company ("Cambridge") filed this action as subrogee[1] of Nicholas and Paula Portlock to recover damages caused by a fire at the Portlocks' residential building located at 7 Green Street in Gorham, Maine. (Def.'s Supp. S.M.F. ¶ 1.) Defendant Granite Bay Care, Inc. ("Granite") provides residential support services for individuals with disabilities, including two individuals who resided at 7 Green Street. (Def.'s Supp. S.M.F. ¶ 2, as qualified; Def.'s Supp. S.M.F. ¶ 6.) Cambridge alleges that Granite negligently failed to prevent one of the residents from starting a fire which caused damage to the property on August 17, 2012. (Def.'s Supp. S.M.F. ¶ 3, as qualified.)

---

1 Subrogee is defined as "[o]ne who is substituted for another in having a right, duty, or claim; esp., the person or entity that assumes the right to collect on another's claim against a third party by paying the other's claim-related debts or expenses. An insurance company frequently becomes a subrogee after paying a policy claim, as a result of which it is then in a position to sue a tortfeasor who injured the insured or otherwise caused harm." Black's Law Dictionary (9th ed. 2009).

Granite leased the 7 Green Street property from the Portlocks under a "Residential Lease Agreement" dated October 13, 2010.[2] (Def.'s Supp. S.M.F. ¶ 4.) This lease was in effect on the date of the fire. (Def.'s Supp. S.M.F. ¶ 7.) Section 10 of the lease provides:

> Tenant acknowledges that Landlord's insurance does not cover personal property damage caused by fire, theft, rain, war, acts of God, acts of others, and/or any other causes, nor shall Landlord be held liable for such losses. Tenant is hereby advised to obtain his own insurance policy to cover any personal losses.

(Def.'s Supp. S.M.F. ¶ 8.) The lease does not contain an express agreement that Granite would be liable in subrogation for fire damage to the property. (Def.'s Supp. S.M.F. ¶ 9.) It does provide that Granite is responsible for "any damage resulting from careless or thoughtless action including but not limited to leaving the water running or the stove turned on." (Pl.'s Add. S.M.F. ¶ 34.)

Prior to entering into the lease agreement, the Portlocks and Granite did not discuss insurance coverage for the property. (Def.'s Supp. S.M.F. ¶¶ 11-12.) In the lease, the Portlocks advised Granite to obtain insurance for Granite's own personal property, but Granite expected the Portlocks to provide insurance coverage for the building itself. (Def.'s Supp. S.M.F. ¶¶ 16-17; Def.'s Supp. S.M.F. ¶ 18, as qualified.) The Portlocks did obtain insurance coverage for the building, but Granite is not an insured under the express terms of the policy.[3] (Pl.'s Add. S.M.F. ¶¶ 31-32.)

Granite leases multiple buildings in Maine and New Hampshire and insures them under a single Commercial General Liability policy, which covers

---

2 The parties dispute who drafted the lease. (Def.'s Supp. S.M.F. ¶ 10; Pl.'s Opp. S.M.F. ¶ 10.)
3 Granite argues that it is an implied coinsured under Maine law for the purposes of this subrogation action. (Def.'s Reply S.M.F. ¶ 32.)

property damage to the rented buildings. (Pl.'s Add. S.M.F. ¶ 30.) Prior to the fire, Granite paid for repairs to the property for damage caused by its clients. (Pl.'s Add. S.M.F. ¶ 35.) After the fire, Granite paid for some emergency services, including boarding up the building. (Pl.'s Add. S.M.F. ¶ 37, as qualified.)

## DISCUSSION

### 1. Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." *Id.*

### 2. Commercial vs. Residential Lease

For residential leases, Maine law is clear: "When the lease does not contain an express agreement addressing the issue of subrogation in the event of a negligently caused fire by a tenant . . . a landlord's insurer may not proceed against the tenant as subrogee." *N. River Ins. Co. v. Snyder*, 2002 ME 146, ¶ 16, 804

3

A.2d 399. This is referred to as the *Sutton* rule because it was first articulated in *Sutton v. Jondahl*, 532 P.2d 478 (Okla. Ct. App. 1975). Because the *Sutton* rule clearly applies to residential tenants in Maine, the first issue before the court is whether the lease between the Portlocks and Granite is a residential or commercial lease.

Granite is a for-profit corporation that uses the property as part of its business to serve individuals with disabilities. On the other hand, the lease limits the use of the property to "residential purposes" and is titled "Residential Lease Agreement." Granite staff also reside at the apartment with Granite's clients. Nevertheless, the business entity is on the lease and it is doubtful that a business could ever be described as a residential tenant. The court will assume for the purposes of this order that the lease is commercial.

### 3. Right of Subrogation Under Commercial Lease

In *Snyder*, the Law Court noted that "[g]enerally, *Sutton* has been applied to commercial and residential leases." *Snyder*, 2002 ME 146, ¶ 15 n.7, 804 A.2d 399. Nevertheless, the *Snyder* court limited its holding to "residential tenants." *Id.* ¶ 16. The question is whether in Maine, *Sutton* also applies to commercial leases.

In *Snyder*, the Law Court relied on *DiLullo v. Joseph*, a case from Connecticut involving a commercial lease. *Id.* ¶ 15. In *DiLullo*, the court explained that subrogation is an equitable doctrine that "invokes matters of policy and fairness." *DiLullo*, 792 A.2d 819, 822 (Conn. 2002). The court found that the policy disfavoring economic waste strongly counseled in favor of applying the *Sutton* rule to all leases. *Id.* According to the court, if a tenant is liable in subrogation to the landlord's insurer, the tenant would have a strong incentive to carry liability insurance for the value of the building—the same

4

value insured by the landlord under a fire insurance policy. *Id.* at 822-23. "This duplication of insurance would . . . constitute economic waste and, in a multiunit building, the waste would be compounded by the number of tenants." *Id.* at 823. The court emphasized that its holding applying the *Sutton* rule was only the default rule and leaves "to the specific agreement of the parties if they wish a different rule to apply to their, or their insurers', relationship." *Id.*

Other courts have taken a different approach to commercial leases. In *Seaco Insurance Co. v. Barbosa*, for example, the Massachusetts Supreme Court criticized courts that apply the *Sutton* rule to commercial leases. 761 N.E.2d 946, 950 (Mass. 2002). According to the court:

> Commercial tenancies present different circumstances and involve different considerations than their residential counterparts. Commercial tenants tend to be more sophisticated about the terms of their leases and, unlike residential tenants, commercial tenants generally purchase liability insurance.

*Id.* In the absence of any rule precluding the tenant's liability for fire damage, the court looked "to the terms of the lease and other evidence to ascertain the intent of the parties" regarding liability. *Id.* at 951.

The Law Court in *Snyder* followed the reasoning in *DiLullo* that the policy against economic waste supports the application of the *Sutton* rule.[4] Because that justification does not turn on whether the lease is residential or commercial, there is no reason to differentiate between the two types of leases. Commercial tenants

---

4 Plaintiff's argument that there is no economic waste in this case because defendant purchased liability insurance for all of its properties under a single policy is unconvincing. First, it attempts to raise a factual issue when *Sutton* operates as a matter of law in the absence of an express provision in the insurance policy. Even accepting that fact, however, defendant would still be liable to the landlord for property damage that is not covered under the landlord's insurance policy. Defendant had an incentive to purchase general liability insurance for property damage not covered under the landlord's policy. It is possible there is no economic waste because each policy covers different risks.

5

who wish to allocate risk in a different manner may do so by including a specific provision in the lease. Having failed to do so here, plaintiff cannot proceed against defendant in a subrogation action.

The entry is:

> Defendant Granite Bay Care, Inc.'s motion for summary judgment is GRANTED.

Dated: 11/17/14

Joyce A. Wheeler
Justice, Superior Court

Plaintff-Liam McCarthy Esq
Defendant-John Wheatley Esq

6