David HART and Cynthia
Lewis, Appellants,

v.

Robert MANNING, Catherine Manning,
James Griffiths and Roy Brown.

Kathleen Taylor, Appellant,

v.

Robert Manning, Catherine Manning,
James Griffiths and Roy Brown.

David Hart and Cynthia
Lewis, Appellants,

v.

Robert Manning, Catherine Manning
a/k/a C. Loudon Manning, Mary Colombo, James Griffiths, Roy Brown,
Bridgewater Riding Club and Endless
Mountains Riding Club.

David Hart and Cynthia
Lewis, Appellants,

v.

Robert Manning, C. Louden Manning,
Mary Colombo, Michael W. Russell
and Debra A. Russell.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2002.
Decided June 5, 2003.
As Amended June 9, 2003.

---

Jason J. Legg, Montrose, for appellant.

Charles L.E. Wage, Montrose, for appellee.

BEFORE: LEADBETTER, Judge, COHN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN.

This appeal concerns the consolidation of four separate actions in the Susquehanna County Court of Common Pleas. The cases arise from complaints filed by three purported members of a not-for-profit, incorporated horse riding club, challenging the decision made by the club's board of directors to sell some of the club's real estate. Appellees, as captioned above, filed preliminary objections alleging that Appellants, as captioned above, were not members of the club and, therefore, lacked standing to bring suit. The trial court agreed with Appellees and sustained the

preliminary objections, thereby dismissing Appellants' complaints. For the reasons set forth below, we affirm in part, reverse in part and remand to the trial court for additional proceedings.

The Bridgewater Riding Club (Bridgewater) is a Pennsylvania not-for-profit corporation, organized on a non-stock basis. It owns realty in Susquehanna County and exists to promote equestrian activities within the community. In 1992, a separate not-for-profit riding club, the Endless Mountains Riding Club (Endless) merged with Bridgewater and the merged entity retained the Bridgewater name. The instant case arises from a decision made several years after the merger, by Bridgewater's Board of Directors (Board), to sell some of the corporation's realty. Appellants have initiated four separate actions, each of which seeks to preclude this sale of property.[1] Bridgewater and its directors preliminarily objected to the complaints and petitions, asserting that Appellants were not members of Bridgewater and, therefore, lacked standing to challenge the action.

The trial court conducted an evidentiary hearing on December 10, 2001, for the purpose of addressing these preliminary objections. At the hearing, each Appellant

---

1. The four cases have been consolidated before the trial court.

The first action was brought by David Hart and Cynthia Lewis against Robert Manning, Catherine Manning, James Griffiths and Roy Brown. In this complaint, the plaintiffs allege that the defendants, who were officers, "individually and collectively have breached their fiduciary responsibilities by allowing the lands and rights-of-way owned by The [sic] Bridgewater Riding Club/Endless Mountains Riding Club to fall into serious disrepair" resulting in $140,000 damage to the real estate. (Complaint, No.2001–62 C.P. at ¶ 7.) In an amended complaint at that docket number, the two plaintiffs expanded their allegations of wrongdoing to include the claim that "[a]s a result of the Defendants' breaching of their fiduciary responsibilities to the Defendant Corporation and its members efforts and monies must be expended to install sluices, regrade crossings and remove impediments and fences in order to open the trail for club purposes." (Amended Complaint, No.2001–62 C.P. at ¶ 9.)

The second action was a Petition for Injunction (No.2001–88 C.P.) filed by Kathleen Taylor against Robert Manning, Catherine Manning, James Griffiths and Roy Brown, in which Taylor sought to preclude the transfer of the club's corporate realty.

The third action was a Petition to Remove Directors Per 15 Pa. C.S. § 5726(c) brought by Hart and Lewis against Robert Manning, Catherine Manning a/k/a C. Loudon Manning, Mary Columbo, James Griffiths, Roy Brown, Bridgewater Riding Club and Endless Mountains Riding Club. In this action, the plaintiffs allege that the defendants had acted "fraudulently, dishonestly and grossly abused their authority...." (Petition to Remove Directors, No.2001–141 C.P. at ¶ 10.) In the petition, the plaintiffs allege that defendants not only failed to maintain and repair corporation-owned real estate, but that defendants also sought "to sell the real estate owned by the [club] thereby defeating entirely the original purpose of the [club] and its members. (*Id.* at ¶¶ 11–12.) The plaintiffs also sought, from the court, a declaration that a lease purchase agreement between the Board and two persons to lease a portion of the corporate property, giving the lessors the option to purchase this property, was null.

In the fourth action (No.2001–923 C.P.), brought by Hart and Lewis against Robert Manning, C. Louden Manning, Mary Colombo, Michael W. Russell and Debra A. Russell, Hart alleges that the lease of the property has resulted in the property losing its preferential tax status under a "Clean and Green" program, pursuant to the Pennsylvania Farmland and Forestland Assessment Act of 1974, Act of December 19, 1974, P.L. 973, *as amendedm*, 72 P.S. §§ 5490.1–5490.13 (the Act), and that this was done in violation of Section 6 the Act, 72 P.S. § 5490.6, by the defendants having failed to notify parties of the potential rollback tax. As a result of this tax, which amounted to $10,121.13, Hart alleges that the property was listed to be sold at the September tax sale by the Susquehanna taxing authorities.

testified as to his or her claim of membership.

David Hart (Hart) claims to have been a member of Bridgewater for several decades. He testified that he paid dues on a non-regular basis, but that he often performed volunteer work on Bridgewater's property, assisting in making repairs to the property when needed, and that this labor was performed in lieu of paying dues. He further testified that he was awarded an honorary lifetime membership in Endless following his donation of land to the corporation. In support of his membership claim, Hart presented two documents. The first document was a copy of the minutes of Endless' November 1983 membership meeting. The minutes reflected that the club authorized lifetime dues-free memberships to each of the members of Bridgewater because of property that Bridgewater and its members had donated to Endless.[2] The second is a copy of a letter dated December 28, 1983, from Kathleen Taylor (Taylor)[3] of Endless to the purported members of Bridgewater, in which each is offered a lifetime membership in Endless.[4]

Taylor testified that she had been a regular, dues paying member of Endless, and that she had been an officer with the club. She also testified that she stopped paying dues in 1994, but that she had not received any notice that her membership was terminated. Cynthia Lewis (Lewis) claims to have a hereditary membership derived from her parents having been members of Endless. She testified that she had never paid dues.[5]

In opposition to Appellants' membership claims, Appellees presented the testimony of Bridgewater's Vice President and Treasurer, along with a number of corporate documents. Bridgewater Vice President Mary Columbo (Columbo), testified as to the relationship between Bridgewater and Endless and as to her understanding of each Appellant's membership status. Columbo testified that Endless merged with Bridgewater in 1992, combining members and realty.[6] In 1993, Bridgewater's by-laws were revised, but contained no provi-

---

2. The first item in the minutes reads:
   Thank you letter to the Bridgewater Riding Club was discussed, for the railroad tracks transaction, which is now completed and recorded. Offer a lifetime membership, due [sic] free to each member of that club. Kathy and Jan to take care of it.
   (Minutes of Endless' November 1983 meeting.)

3. As noted below, at the time the letter was issued, Taylor was an officer with Endless.

4. The letter had a return address of Endless Mountains Riding Club and a recipient address of Bridgewater Riding Club. The text of the membership letter reads:
   Dear Member:
   This letter is to thank you for your generosity in donating the tracks and your clubs [sic] funds to our club. We will be sure that the tracks are kept for the purpose that they were intended to be used for, recreational use.
   We hope that you accept from our club an honorary life time membership in Endless Mountains Riding Club. Again thank you very much.
   (Letter from Taylor of Endless to Bridgewater, dated December 28, 1983.) The bottom of the letter indicated the recipients of the letter. Hart was among the fifteen identified recipients.

5. Additionally, there was testimony from each Appellant indicating that the enforcement of dues provisions had been very lax. The testimony indicated that both corporations were operated in a very informal manner. Testimony was presented that, in lieu of dues, people provided services to the corporation itself, or donated extensive tracts of land to the corporations.

6. The merged club retained the Bridgewater name.

sions for notifying members of suspension of their memberships for failure to pay dues. Additionally, these bylaws defined only one class of membership, made contingent solely upon the payment of dues. The bylaws defined no hereditary or lifetime membership classes, and no alternative to the annual payment of dues.

As to the membership status of each Appellant, Columbo testified that she found nothing in corporate records to indicate that Hart had ever been a Bridgewater member. Regarding the membership status of Lewis and Taylor, Columbo testified that Lewis and Taylor had both been members following the merger; however, under the current bylaws, each lost her membership status in 1994 by failing to pay dues. Columbo testified that no member of Bridgewater, including Lewis and Taylor, had ever been sent notice that membership would be suspended for failure to pay dues. Bridgewater's Treasurer, Barbara Galvin (Galvin), indicated that she had only been an officer for seven months, so she did not have any knowledge as to whether notices had been sent. Galvin

was also unable to testify as to whether any of the Appellants had been members of Bridgewater.

In addition to the testimony of Columbo and Galvin, Appellees submitted several documents at the hearing: the current Bridgewater Bylaws; the current Bridgewater membership list; the Bridgewater membership list for 1964 through 1973; a Bridgewater newsletter from February 12, 1987; a Bridgewater newsletter from January 6, 1990; and a letter dated December 28, 1990. The corporation did not present any of the earlier Bridgewater bylaws or any of the Endless bylaws.[7]

Upon conclusion of the hearing, the trial court noted its agreement with Bridgewater's preliminary objections based on standing, and sustained those objections. In reaching this decision, the trial court relied on Section 5764.1 of the Nonprofit Corporation Law (the Law), 15 Pa.C.S. § 5764.1,[8] which provides that only a member or director of a not-for-profit corporation has standing to bring an action against the corporation. The trial court also relied on Section 5103 of the Law, 15

---

7. Bridgewater did not present any documentation surrounding the merger of the clubs, particularly the membership list of Endless at the time of merger or any specific provisions for incorporating Endless members and property into the merged corporation. Columbo testified that she had numerous additional corporate documents in her car that she could bring to the hearing, although she did not identify these documents.

8. This provision was repealed by Section 4(4) of the Act of June 22, 2001, P.L. 418. The current provisions dealing with claims against a non-profit corporation are codified at 15 Pa.C.S. § 5782. They state:

Actions against directors, members of another body and officers.
(a) General rule.—Except as provided in subsection (b), in any action or proceeding brought to enforce a secondary right on the part of one or more members of a nonprofit

corporation against any present or former officer, director or member of another body of the corporation because the corporation refuses to enforce rights that may properly be asserted by it, each plaintiff must aver and it must be made to appear that each plaintiff was a member of the corporation at the time of the transaction of which he complains.
(b) Exception.—Any member who, except for the provisions of subsection (a), would be entitled to maintain the action or proceeding and who does not meet such requirements may, nevertheless in the discretion of the court, be allowed to maintain the action or proceeding on preliminary showing to the court, by application and upon such verified statements and depositions as may be required by the court, that there is a strong prima facie case in favor of the claim asserted on behalf of the corporation and that without the action serious injustice will result.

Pa.C.S. § 5103, which defines "member" as "one having membership rights in a corporation in accordance with the provisions of its bylaws." The trial court then turned to Article III, Section 1 of Bridgewater's bylaws, which provides that membership is determined by payment of the annual dues assessment and that, if dues are not paid by July of the same year, membership is terminated. Noting that none of these members had paid dues for some time, the trial court concluded that, under the terms of the bylaws, Appellants were not members.[9] The court also addressed Appellants' arguments that under Section 5544(c) of the Law, 15 Pa.C.S. § 5544(c),[10] Bridgewater, as a not-for-profit corporation, was required to provide notice prior to terminating membership for failure to pay dues. The trial court dismissed the applicability of this provision, acknowledging that Appellants were correct in asserting that membership could not be terminated without reasonable notice, but noting that the statutory provision "presumes that one is originally a dues-paying member. The only [Appellant] who ever paid dues to either of these two clubs was Taylor, and she stopped paying in 1994." (Trial Court Opinion (Opinion) at 3.) The trial court then, essentially, made a finding of constructive notice as to Taylor, noting that she was the author of various club newsletters from 1987 and 1990, and that both newsletters indicated a "loss of membership privileges for non-payment of dues to that club." (Opinion at 3, n. 1.)

The trial court concluded that, "[o]nce the [Appellees] established prima facie that [Appellants] were not members of Bridgewater, it became [Appellant]s' burden to establish such membership. In this they failed. Consequently, the actions were dismissed." (Opinion at 3.) The trial court also addressed the 1983 letter sent to Hart, concluding that the letter constituted an offer of lifetime membership, which it was not clear that he accepted. The trial court noted that the current Bridgewater bylaws make no provision for "lifetime"

9. The trial court reasoned that:

> The Bridgewater Riding Club by-laws provide that membership is determined by payment of the annual dues assessment, and that if dues are not paid "by July of the same year your membership is terminated." See Article III, Section 1 of the by-laws. At hearing, the Defendants produced the current Club membership list. None of the Plaintiffs appear[s] on that list. Plaintiff Taylor was once a member of the Endless Mountains Riding Club, but has not paid dues since 1994. Plaintiff Lewis concedes that she has never paid dues to either Club.
> (Trial Court Opinion (Opinion) at 2.)

10. This section provides

§ 5544. Fees dues and assessments

(a) General rule.—A nonprofit corporation may levy dues or assessments, or both, on its members, if authority to do so is conferred by the bylaws, subject to any limitations therein contained. Such dues or assessments, or both, may be imposed upon all members of the same class either alike or in different amounts or proportions, and upon a different basis upon different classes of members. Members of one or more classes may be made exempt from either dues or assessments, or both, in the manner or to the extent provided in the bylaws.

(b) Amount and method of collection.—The amount of the levy and method of collection of such dues or assessments, or both, may be fixed in the bylaws, or the bylaws may authorize the board of directors or other body to fix the amount thereof from time to time, and make them payable at such time and by such methods of collection as the board of directors or other body may prescribe.

(c) Enforcement of payment.—A nonprofit corporation may make bylaws necessary to enforce the collection of such dues or assessments, including provisions for the termination of membership, upon reasonable notice, for nonpayment of such dues or assessments, and for reinstatement of membership.

members. Accordingly, it sustained the preliminary objections. This appeal followed.[11]

■ Both parties agree that Appellants are entitled to a presumption of standing that Appellees can rebut with competent evidence.[12] The issue before this Court is whether the trial court erred in concluding that Appellees presented sufficient evidence to rebut this presumption.[13]

Regarding the purported status of Lewis and Taylor, Columbo acknowledged that both had been members of Bridgewater as recently as 1994, but that each had lost her membership status thereafter for failing to pay dues. Both Bridgewater corporate officers testified that the corporation had not sent notice to either Lewis or Taylor of membership suspension for failure to pay dues. Appellants had argued before the trial court that, under Section 5544(c) of the Law, a not-for-profit corporation could not revoke membership status without first providing reasonable notice. The trial court dismissed this argument, finding

Section 5544(c) inapplicable, because it concluded that Lewis, never having paid dues, had not been a member and that Taylor had voluntarily let her membership in the corporation lapse.

Section 5544(c) allows not-for-profit corporations to include provisions within their bylaws for the "termination of membership, upon reasonable notice, for nonpayment of such dues or assessments...." 15 Pa.C.S. § 5544(c). This notice and termination provision is authorized so as to afford not-for-profit corporations a reasonable means of enforcing payment of any membership dues made payable under the bylaws. Appellants correctly cite to our decision in *Quaker City Yacht Club v. Williams*, 59 Pa.Cmwlth. 256, 429 A.2d 1204 (1981), in which we found a not-for-profit corporation to be in violation of Section 5544(c) for its failure to provide "reasonable notice of the intent to suspend as of a date certain if a member has not paid his delinquent dues." *Id.* at 1205.[14] Accordingly, we found the not-for-profit's

---

15 Pa.C.S. § 5544.

**11.** The appeal was initially brought before the Pennsylvania Superior Court. Under Section 762(a)(5) of the Judicial Code, 42 Pa.C.S. § 762(a)(5), the Commonwealth Court has exclusive jurisdiction in

(i) All actions or proceedings relating to corporations not-for-profit arising under Title 15 (relating to corporations and unincorporated associations) or where is drawn in question the application, interpretation or enforcement of any provision of the Constitution, treaties or laws of the United States, or the Constitution of Pennsylvania or any statute, regulating in any such case the corporate affairs of any corporation not-for-profit subject to Title 15 or the affairs of the members, security holders, directors, officers, employees or agents thereof, as such.

(ii) All actions or proceedings otherwise involving the corporate affairs of any corporation not-for-profit subject to Title 15 or the affairs of the members, security holders,

directors, officers, or employees or agents thereof, as such.

*Id.* Because the issues in this case fall within these provisions, the Superior Court transferred the case to this Court.

**12.** The objecting party bears the burden of supporting its objections as to plaintiffs' standing. In doing so, it may not rely merely on the allegations contained within the preliminary objections, but must produce competent evidence in support of its position. If an objector produces sufficient evidence, the burden shifts to plaintiff to present evidence rebutting the defense testimony.

**13.** Our standard of review is to determine if the trial court committed either an abuse of discretion or an error of law. *Smith and McMaster, P.C. v. Newtown Borough*, 149 Pa. Cmwlth. 356, 613 A.2d 129 (1992).

**14.** We note that *Quaker City* involved application of 15 Pa.C.S. § 7545(c), which was subsequently recodified at 15 Pa.C.S. § 5544(c). The two provisions are substantively identical.

suspension of the particular member for nonpayment of dues to be improper.

■ In the instant case, Bridgewater's by-laws inappropriately failed to include a provision requiring it to provide members, who are delinquent in their payment of dues, with notice prior to suspending their memberships. The trial court places much significance on Lewis never having paid dues, noting that Section 5544 presupposes the party is a dues paying member. This analysis ignores Colombo's testimony, specifically, that both Lewis and Taylor were members in 1994, and that the only reason that both had their memberships suspended was their subsequent failure to pay dues. Bridgewater was required to provide notice under Pennsylvania law. Colombo testified that no such notice was provided. Appellees, therefore, did not meet their burden of rebutting Taylor's and Lewis's presumption of membership. Delinquent as Taylor and Lewis may have been in their payment of dues, the statute prohibits their memberships from being terminated without Bridgewater issuing appropriate notice. *See Quaker City.*[15] The trial court erred in its application of Section 5544. As we have previously noted, "[a]lthough the courts are reluctant to interfere in the affairs of private corpora-

tions ... the courts will not stand idly by when under the pretext of following 'club rules' the laws of Pennsylvania have been violated." *Quaker City,* 429 A.2d at 1206 (citations omitted).

■ As to Hart's membership status, the trial court reviewed the evidence presented by both sides, weighing the credibility of the witnesses and their testimony, and reviewing the documentary evidence presented and, ultimately, concluded that Hart was not and had not been a member of either club. Unlike her testimony regarding Lewis and Taylor, Colombo did not testify that Hart had been a member of the riding club. Regarding the documentary evidence Hart produced, specifically the letter offering him a lifetime membership in Endless, the trial court concluded that Hart, although having received the offer, did nothing to accept it.[16] The trial court appropriately determined that Appellees' evidence, including the production of membership lists and bylaws, as well as the testimony of its officers, supported the determination that Hart was not a member. We find no error with the trial court's resolution of the factual issues.

For these reasons, we reverse the order of the Court of Common Pleas of Susque-

**15.** Although *Quaker City* arose in a different procedural context than the instant case, its holding is determinative of the issue before us. In *Quaker City,* the disenfranchised member pursued an equitable remedy because he was given notice in the form of a letter that indicated his membership had been terminated based upon his failure to pay dues by the given deadline, along with his unredeemed dues check. With this notice, he proceeded to act to restore his membership status so as to continue the benefits and privileges, as well as the continued use of the Yacht Club facilities, made available to him only by means of his membership status. In the instant case, not only was there no indication that Appellants were no longer members, but there was no indication that parties were prohibited in any manner from continued use of the horse

riding trails. Unlike the situation in *Quaker City,* Appellants had no indication, prior to the argument raised by the Corporation in its preliminary objections, that their individual membership within the club was an open question. For purposes of application of the notice provision, it is of no consequence that membership status was the primary issue in *Quaker City,* whereas here it is an ancillary, albeit threshold, issue to the four cases summarized *supra* in footnote 1.

**16.** Although the trial court does not address whether this letter and its salutation ("Dear Member") is evidence of Hart's 1983 membership in Bridgewater, as Hart has not raised this issue, we do not address it.

hanna County as to the standing of Lewis and Taylor, and affirm as to the standing of Hart.

### ORDER

NOW, June 5, 2003, the order of the Court of Common Pleas of Susquehanna County in the above-captioned matter is reversed as to the standing of Lewis and Taylor, and affirmed as to the standing of Hart. This matter is remanded for additional proceedings consistent with this opinion.

Jurisdiction relinquished.

### CONCURRING AND DISSENTING OPINION BY: Senior Judge KELLEY.

I concur in the result reached by the Majority with respect to Appellant David Hart. However, I respectfully dissent to the Majority's conclusion with respect to Appellants Cynthia Lewis and Kathleen Taylor.

The present action was commenced in 2001 when the Appellants filed a number of complaints, and amended complaints, in the trial court pursuant to Section 5793 of the Law.[1] The complaints alleged that Bridgewater's Board of Directors had breached its fiduciary duties with respect to some of the land owned by Bridgewater. The Board filed preliminary objections to the complaints which alleged that the Appellants were not members of the Bridgewater and, therefore, lacked standing to initiate these proceedings. On December 10, 2001, a hearing was conducted before the trial court on the preliminary objections and all parties were given the opportunity to present evidence in support of their respective positions. That same day, the trial court issued the instant order granting Bridgewater's preliminary objections and dismissing Appellant's complaint.

As noted by the Majority, Appellants Lewis and Taylor were presumed to be members of Bridgewater, and Bridgewater was required to rebut this presumption with competent evidence. Contrary to the Majority's assertion, Bridgewater clearly met its burden of proof in this regard. Indeed, as the trial court noted:

Only a member or director of a not-for-profit corporation has standing to bring an action against the corporation, its officers or directors, involving the conduct of the organization's affairs. 15 Pa.C.S.A. Sec. 5762.1. A "member" is

1. Section 5793 of the Law provides, in pertinent part:

   (a) **General rule.**—Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of another body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

   15 Pa.C.S. § 5793(a). *See also* Section 5782 of the Law which provides, in pertinent part:

   (a) **General rule.**—Except as provided in subsection (b), in any action or proceeding brought to enforce a secondary right on the part of one or more members of a nonprofit corporation against any present or former officer, director or member of an other body of the corporation because the corporation refuses to enforce rights that may

properly be asserted by it, each plaintiff must aver and it must be made to appear that each plaintiff was a member of the corporation at the time of the transaction of which he complains.

(b) **Exception.**—Any member who, except for the provisions of subsection (a), would be entitled to maintain the action or proceeding and who does not meet such requirements may, nevertheless in the discretion of the court, be allowed to maintain the action or proceeding on preliminary showing to the court, by application and upon such verified statements and depositions as may be required by the court, that there is a strong prima facie case in favor of the claim asserted on behalf of the corporation and that without the action serious injustice will result.

15 Pa.C.S. § 5782(a), (b).

defined as "one having membership rights in a corporation in accordance with the provisions of its bylaws." 15 Pa.C.S.A. Sec. 5103.

The [Bridgewater] by-laws provide that membership is determined by payment of the annual dues assessment, and that if dues are not paid "by July of the same year your membership is terminated." See Article III, Section 1 of the by-laws. At hearing, [Bridgewater] produced the current Club membership list. None of the [Appellants] appear on that list. [Appellant] Taylor was once a member of the Endless Mountains Riding Club [prior to its merger with Bridgewater], but has not paid dues since 1994. [Appellant] Lewis concedes that she has never paid dues to either Club. She claims, however, that since her parents were once members, she now has some undefined hereditary right to membership . . .

Trial Court Opinion at 2. Thus, Bridgewater clearly established that neither Appellant Lewis nor Appellant Taylor was a member of Bridgewater at the time that the instant complaints were filed, thereby conferring standing upon Appellants Lewis and Taylor to maintain the instant actions under the Law.

It may well be true that the memberships of Appellants Lewis and Taylor in Bridgewater were improperly suspended under the provisions of Section 5544(c) of the Law. That wrongful action could well be the subject of an equity action brought by Appellants Lewis and Taylor against Bridgewater in which they seek to reverse this wrongful action and to restore their membership privileges. *See, e.g., Quaker City Yacht Club v. Williams,* 59 Pa. Cmwlth. 256, 429 A.2d 1204 (1981).

However, the foregoing in no way alters the fact that, at the time the instant complaints were filed, Appellants Lewis and

Taylor were not members of Bridgewater, and their membership privileges in Bridgewater had not been restored. As a result, the trial court correctly sustained the preliminary objections as Appellants Lewis, Taylor and Hart did not have standing to prosecute the instant actions under the relevant provisions of the Law.

Accordingly, unlike the Majority, I would affirm the order of the trial court.