STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-04-82

Gilbert & Grief, P.A.,
    Plaintiff

v.

Order (Motions for Partial
Summary Judgment)

Bruce Blackmer et al.,
    Defendants

FILED & ENTERED
SUPERIOR COURT

MAY 19 2005

PENOBSCOT COUNTY

Pending before the court are two motions for summary judgment, one filed jointly by defendants OneBeacon Insurance Co. and Northern Assurance Company of America ("the insurance companies"), and the other (a motion for partial summary judgment) filed by the plaintiff, Gilbert & Grief, P.A. The court has reviewed the parties' submissions on these motions. The motions are directed toward Gilbert & Grief's claims against the insurance companies, which are predicated on its contention that it had perfected an attorneys' fees lien on settlement proceeds that the insurance companies paid directly to Gilbert & Grief's former client, defendant Bruce Blackmer. For the reasons set out below, the court concludes that the fee agreement between Gilbert & Grief and Blackmer was insufficient as a matter of law to generate such a lien, even if Maine law recognizes liens to secure payment of attorney's fees.

A party is entitled to summary judgment when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c); *see also Darlings v. Ford Motor Co.*, 2003 ME 21, ¶ 14, 817 A.2d 877, 879. The motion court views the evidence in the light most favorable to the non-moving party, *Benton Falls Associates v. Central Maine Power Company*, 2003 ME 99, ¶ 10, 828 A.2d 759, 762, and it does not search or consider any part of the record not specifically referenced in the parties' separate statements of material facts. M.R. Civ. P. 56(h)(4); *see also Gilbert v. Gilbert*, 2002 ME 67, ¶ 15, 796 A.2d 57, 60-61

1

Pursuant to a contingency fee agreement executed in October 1998, Charles E. Gilbert, III, an attorney practicing with Gilbert & Grief, represented the defendant Bruce Blackmer in connection with a fire loss claim against two insurance companies, OneBeacon Insurance Co. and Northern Assurance Company of America, who appear as co-defendants here.[1] Plaintiff's Statement of Material Facts (PSMF), ¶ 1. Through the law firm, Blackmer filed suit against the two insurance companies, seeking recovery under insurance policies that the companies had issued. PSMF, ¶ 2; Defendants' Statement of Material Fact (DSMF), ¶ 5. The suit led to discovery events and dispositive motion practice, finally resulting in an agreement among the parties to proceed to arbitration. PSMF, ¶ 2. As part of the arbitration process, the parties agreed to a high-low framework, under which Blackmer was assured of receiving at least $35,000, regardless of the outcome of the arbitration. PSMF, ¶ 8. Nonetheless, prior to the issuance of an arbitration award, Gilbert purported to settle Blackmer's claims, with authority from Blackmer, for $51,629.55. PSMF, ¶ 2.

Even after the parties reached the apparent settlement and the insurance companies' attorney, Samuel Lanham, tendered a release, outstanding issues prompted Blackmer to hold off from consummating the deal. PSMF ¶ 3. Gilbert continued to negotiate with the carriers, and the remaining issues ultimately were resolved to the satisfaction of Gilbert and Blackmer. PSMF ¶ 4. In light of the agreement, the two carriers issued checks and delivered them to Lanham, who was prepared to give them to Gilbert and Blackmer once Blackmer signed the release. PSMF, ¶ 7. Despite the agreement, however, Blackmer refused to execute the release and instructed Gilbert to pursue a course of action that Gilbert felt was unethical. PSMF ¶ 5. Gilbert sought – and, in late May 2003, was granted -- leave to withdraw because of the prospects that he would become a witness in an anticipated proceeding brought by the carriers to enforce the terms of the settlement. PSMF, ¶ 6; DSMF, ¶ 7. In a letter dated April 21, 2003, and received on April 22, PSMF, ¶ 12, Gilbert advised Lanham of his intention to withdraw from the case. DSMF, ¶ 6. In that letter, Gilbert also advised Lanham that he (Gilbert)

---

[1] To put it more precisely, Defendant OneBeacon formerly did business as Commercial Union Insurance Company, which was the party in the underlying proceeding. Defendants' Statement of Material Fact, ¶ 3. OneBeacon is therefore Commercial Union's successor in interest.

2

claimed a lien against the settlement proceeds, amounting to attorney's fees of $16,844.61 and disbursements of $696.43, for a total of $17,541.04. PSMF, ¶¶ 9, 11, 13; DSMF, ¶ 6. At various times, Gilbert also notified Blackmer that he claimed those amounts of fees and disbursements that Gilbert believed he had earned under the contingent fee agreement. PSMF ¶ 10. PSMF, ¶ 9.

After Gilbert was granted leave to withdraw as Blackmer's counsel, Blackmer proceeded pro se from that time through the execution of his settlement on the fire loss claim. DSMF, ¶ 8. On November 26, 2003, Blackmer and the insurance companies reached a settlement agreement. DSMF, ¶ 10. On December 1, Blackmer told Lanham that he (Blackmer) did not want Gilbert to be paid from the settlement proceeds and that he would deal directly with Gilbert to address Gilbert's claim for attorney's fees. DSMF ¶ 15. The same day, Lanham notified Gilbert that the parties had reached a settlement and that the insurers were paying Blackmer on the claim. DSMF, ¶ 12. Lanham also told Gilbert that he (Gilbert) and Blackmer would have to resolve the fee dispute directly. DSMF, ¶ 13. Gilbert advised that he would file suit to collect attorney's fees. DSMF, ¶ 14. The insurance companies then tendered payments totaling $51,629.55 directly to Blackmer by two checks dated December 1, 2003. PSMF ¶¶ 14, 15; DSMF ¶ 16. This is the same amount that the carriers were prepared to pay earlier, based on the settlement the parties reached while Gilbert represented Blackmer. PSMF, ¶ 14. The settlement payment checks were made payable to Blackmer only. PSMF, ¶ 16.

Gilbert & Grief filed a complaint against Blackmer for breach of contract (count 1), unjust enrichment (count 2) and quantum meruit (count 3). The plaintiff also filed a claim against the insurance companies for recovery on an attorneys' fee lien (count 4) and for conversion (count 5). OneBeacon and Northern Assurance have filed a joint motion for summary judgment on counts 4 and 5. Gilbert & Grief has filed a cross motion for partial summary judgment against the insurance companies on count 4 only, seeking a ruling that there existed an attorney's fees lien on the settlement proceeds that the insurance companies elected to pay entirely and directly to Blackmer. The motions at bar do not implicate Gilbert & Grief's claims against Blackmer.

When it addressed the issue most recently, the Law Court reserved ruling on the question of whether a fee agreement between an attorney and that attorney's client may

3

generate a lien on the proceeds of any recovery awarded to the client. *See Libner v. Maine County Commissioners' Ass'n*, 2004 ME 39, ¶ 10, 845 A.2d 570, 573. There, the Court did not reach the ultimate issue of whether this type of lien exists under Maine law because it held that even if attorneys' fees liens do exist in Maine, the attorney-plaintiff in that case could not benefit from such a remedy because he had not satisfied the elemental notice requirement of any such lien. *Id.* This court reaches a comparable result here: even if attorney's fees liens are a feature of Maine's legal landscape, Gilbert & Grief would not be entitled to any remedy based on a lien claim here because as a matter of law the contingency fee agreement executed between the firm and Blackmer was not sufficient to create such a lien.

If Maine law were to formally recognize attorney's fees liens, the court is satisfied that the conditions and requirements governing such liens would be those set out in the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS ("Restatement"), § 43 (2000). As a general matter, this authority is persuasive because, historically, the Maine courts have placed considerable reliance on the various Restatements of the law. Further, more specific to the circumstances of the case at bar, the Restatement requires that, for an attorney's fee lien to arise, the lawyer and client must agree that the attorney can obtain "a lien on the proceeds of the representation to secure payment for the lawyer's services and disbursements in the matter. . . ." *Id.*, § 43(2)(a). An attorney's fees lien in Maine necessarily would be a charging lien, under which the attorney's fees are paid out of the proceeds recovered on behalf of the client. *Id.*, § 43(2).[2] As is noted in the commentary to the Restatement, in the absence of a statute creating attorney's fees liens, there exists a general common law requirement that, to create a lien against a recovery achieved for the benefit of a client, the lawyer and client must have agreed that the lawyer's fees would be paid from that recovery. In other words, because Maine's statutes do not establish

---

[2] A charging lien would allow an attorney to retain a portion of the proceeds recovered on behalf of the client. The alternative, namely a retaining lien, would authorize the attorney to retain the client's file until the attorney's fees had been paid. Maine Bar Rule 3.7(c)(1) does not allow retaining liens. *Libner*, 2004 ME 39, ¶ 11, n.6. 845 A.2d at 573. Neither would the Restatement. *See* Restatement, § 43(1). Indeed, this common ground between existing Maine law and the Restatement enhances the appeal of the Restatement's other provisions regarding attorney's fees liens.

4

attorney's fees liens,[3] a lien can be can be created only when the lawyer and client agree to such a lien. As is explained in the commentary to the Restatement,

> . . .the client and lawyer must contract in writing for the lien. That requirement ensures that the client has notice that the lawyer may detain part of any recovery and an opportunity to bargain for a different result. . . .The requirement of a writing also permits third parties to verify the lien's existence and provisions. The lien contract need not specify the amount of the fee, which is often unknown in advance, and need not use the work "lien." However, *it must make clear that the lawyer will be entitled to part of the proceeds of the action to pay the lawyer's fee.*

Restatement, § 43, cmt. e (emphasis added). Because a lien affects the disposition of proceeds that otherwise are payable to a client, the rights of others to that property (namely, the attorney's claim to a portion of those proceeds as compensation for his work) must be the product of an agreement, unless there exists statutory law providing otherwise. The court finds this reasoning to be persuasive and consequently concludes that if attorney's fees liens were recognized in Maine, it could arise only as the product of a contract or agreement between the attorney and client.

The record on summary judgment in the case at bar does not generate a factual contention that the fee agreement between Gilbert & Grief and Blackmer provided for the creation of a lien against any proceeds generated by Blackmer's settlement of the fire loss claim. The plaintiff's rule 56(h) statement confirms the existence of a contingency fee agreement between the firm and Blackmer. *See* PSMF, ¶ 1. That submission also asserts that Gilbert "*claimed*" a lien in the amount of one-third of the gross recovery, plus disbursements. *See id.,* ¶ 11 (emphasis added). However, the statement of material fact does not suggest that the contingency fee agreement included any provision that the firm's attorney's fees would be paid out of the settlement proceeds. At trial, the absence of any evidence making "clear that the lawyer will be entitled to part of the proceeds of the action to pay the lawyer's fee," *see* Restatement, § 43, cmt. e, would be fatal to Gilbert & Grief's contention that the fee agreement gave rise to a lien for its fees.

---

[3] The *Libner* Court observed that the Maine legislature has not created an attorney's fee lien, although it has assumed the existence of one. 2004 ME 39, ¶ 10, n. 4, 845 A.2d at 573.

Even if one were to go beyond the parties' statements of material fact and consider the terms of the written contingency fee agreement that are not recited in those statements of material fact,[4] *but see* M.R.Civ.P. 56(h)(4), such a broadened inquiry still does not yield the factual basis on which Gilbert & Grief can argue that it and Blackmer agreed that the firm could detain a portion of the recovery as its fees. The contingency fee agreement provides for the amount of the fee the firm would be paid. It also identifies the condition for payment, which is "the recovery of any money" compensating Blackmer on his fire loss claim. However, the contract does not arguably recite or embody an agreement that would entitle Gilbert & Grief to retain part of the proceeds of the action to pay fees due to it. In other words, the agreement does not identify the source of the fee payment as the proceeds obtained by Blackmer to dispose of his fire loss claim. For the reasons set out above, for an attorney's fees lien to arise, the agreement must provide for it. The agreement at issue here does not. Therefore, even if Gilbert & Greif had the right to create a lien against any recovered proceeds that could be enforced when it terminated its representation of Blacker prior to the execution of a settlement, it did not do so here.

Gilbert & Grief argues that the parties impliedly agreed to the creation of a lien interest. The basis for this implied term, it argues, is the mathematical connection between the gross recovery and the amount of legal fees to which Gilbert & Grief would be entitled as compensation for its work on Blackmer's behalf. The commentary to the Restatement quoted above, however, imposes a requirement that the agreement between the attorney and the client must "make clear" that the attorney's fees will be extracted from the client's recovery. The parties' contingency fee agreement at issue here does not contain any such suggestion. The formula that bases the amount of attorney's fees on the amount of Blackmer's gross recovery is qualitatively distinct from an agreement that the very dollars used to satisfy the attorney's fees obligation will be the same dollars paid by the insurance companies.[5]

---

[4] The record contains no evidence regarding the terms of the fee agreement, beyond the written instrument itself, which is part of the record on this motion.

[5] A passage that Gilbert & Grief quotes from one of the cases it relies on, *Barnes v. Alexander*, 232 U.S. 117 (1914), appears to draw this distinction.

6

Therefore, the court concludes that as a matter of law Gilbert & Grief did not have a lien against the settlement proceeds. This undermines Gilbert & Grief's action to enforce the putative lien against the insurance companies, which is set out in count 4 of the complaint. Further, an essential predicate to Gilbert & Greif's conversion claim against those defendants is the existence of a lien: the plaintiff argues that it had an interest, arising from the lien, in that part of the settlement proceeds representing its fees and disbursements and that the insurance acted in disregard of that interest by giving that money directly to Blackmer. Because, however, the fee agreement did not create that lien-based interest, there can be no conversion. *Cf. Doughty v. Sullivan*, 661 A.2d 1112, 1122 (Me. 1995) (action for conversion requires proof of, among other things, a property interest in the allegedly converted property). Thus, count 5 fails.

The entry shall be:

For the foregoing reasons, the summary judgment motion of defendants OneBeacon Insurance Co. and Northern Assurance Company of America is granted. Summary judgment on counts 4 and 5 is entered for those defendants and against the plaintiff. The plaintiff's motion for partial summary judgment is denied. Defendants OneBeacon Insurance Co. and Northern Assurance Company of America are awarded their costs of court.

On its own motion, the court amends the order dated August 23, 2004, which addresses the schedule for ADR. As a result of this order on the motions for summary judgment, the remaining claims are set out in counts 1, 2 and 3 of the complaint, which are claims against defendant Blackmer only. The remaining parties shall complete ADR as required by M.R.Civ.P. 16B no later than July 1, 2005. This case will be called for trial in July but no earlier than July 5, 2005.

Dated: May 18, 2005

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

7

GILBERT AND GREIF PA - PLAINTIFF

SUPERIOR COURT
PENOBSCOT, ss.
Docket No  BANSC-CV-2004-00082

Attorney for: GILBERT AND GREIF PA
ARTHUR GREIF  - RETAINED 04/28/2004
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339

**DOCKET RECORD**

vs
BRUCE BLACKMER  - DEFENDANT
ONE BEACON INSURANCE CO - DEFENDANT
7070 SABLE OAKS DRIVE
SOUTH PORTLAND ME 04106
Attorney for: ONE BEACON INSURANCE CO
SAMUEL W LANHAM JR - RETAINED 05/19/2004
CUDDY & LANHAM
470 EVERGREEN WOODS
BANGOR ME 04401

NORTHERN ASSURANCE COMPANY OF AMERICA - DEFENDANT
7070 SABLE OAKS DRIVE
SOUTH PORTLAND ME 04106
Attorney for: NORTHERN ASSURANCE COMPANY OF AMERICA
SAMUEL W LANHAM JR - RETAINED 05/19/2004
CUDDY & LANHAM
470 EVERGREEN WOODS
BANGOR ME 04401

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 04/28/2004

## Docket Events:

04/28/2004 FILING DOCUMENT - COMPLAINT FILED ON 04/28/2004
           EXHIBIT A ATTACHED.

04/28/2004 Party(s):  GILBERT AND GREIF PA
           ATTORNEY - RETAINED ENTERED ON 04/28/2004
           Plaintiff's Attorney: ARTHUR GREIF

04/28/2004 Party(s):  BRUCE BLACKMER
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 04/28/2004
           BY PLAINTIFF.

04/28/2004 Party(s):  BRUCE BLACKMER
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 04/23/2004
           OFFICER'S RETURN OF SERVICE AS TO DEFENDANT BRUCE BLACKMER.

04/28/2004 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 04/28/2004
           TO PLAINTIFF'S ATTORNEY.

05/05/2004 Party(s):  BRUCE BLACKMER
           RESPONSIVE PLEADING - ANSWER FILED ON 05/04/2004
           BY DEFENDANT PRO SE.

STATE OF MAINE                         SUPERIOR COURT
PENOBSCOT, SS.                         CIVIL ACTION
                                       Docket No. CV-04-82

                                       JLH -P:;;- I'/ :. :


Gilbert & Grief, P.A.,
        Plaintiff


        v.                             Order (Motion for Su<del>mmary Judgment</del>

                                       FILED & ENTERED
                                       SUPERIOR COURT
                                       NOV 21 2005
                                       PENOBSCOT COUNTY
Bruce Blackmer,
        Defendant


Pending before the court is the plaintiff's second motion for summary judgment.[1]

The court has reviewed the parties' submissions on the motion. Framed as claims for

breach of contract, unjust enrichment and quantum meruit, the plaintiff seeks recovery for

an amount that it claims is due from the defendant under a contingency fee agreement for

legal services rendered in connection with a fire loss claim. Through the motion at bar,

the plaintiff seeks summary judgment on at least the express and implied contract claims.

A party is entitled to summary judgment when the record shows that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law. M.R.Civ.P. 56(c); *see also Darlings v. Ford Motor Co.*, 2003 ME 21, ¶

14, 817 A.2d 877, 879. The motion court views the evidence in the light most favorable

to the non-moving party, *Benton Falls Associates v. Central Maine Power*

*Company*, 2003 ME 99, ¶ 10, 828 A.2d 759, 762, and it does not search or consider

any part of the record not specifically referenced in the parties' separate statements of

material facts. M.R. Civ. P. 56(h)(4); *see also Gilbert v. Gilbert*, 2002 ME 67, ¶ 15, 796

A.2d 57, 60-61. Based on the latter principle, the plaintiff correctly notes that the

---

[1] Earlier in the course of this proceeding, the plaintiff filed a motion for partial summary
judgment against defendants who are no longer parties to this action. The earlier motion
related to the plaintiff's claims against those now-dismissed parties and did not affect the
claims against the remaining defendant, Bruce Blackmer. After the first motion was
denied, the plaintiff sought leave to file the motion at bar. The defendant did not oppose
that motion, the court granted the motion for leave, and so the summary judgment matter
is in order for consideration now.

1

defendant has failed to integrate portions of his affidavit into the record on summary judgment. Consequently, as it relates to the defendant's submissions on the motion, the court considers only that part of his proffered record that he uses to support his statement of material fact. The court disregards other aspects of his submissions that are not incorporated into his rule 56(h) statement through record references.

Even as defined in this limited way, however, the record generates at least several genuine issues of material fact that preclude entry of judgment for the plaintiff as a matter of law. First, the record reveals a genuine factual dispute regarding the circumstances of the plaintiff's termination of its representation of the plaintiff. This raises questions about the identity of the party who may have materially breached the contract for legal services. This in turn bears on the liability aspects of all three claims. Second, the record suggests an agreement between the parties that they entered into an express contractual relationship. If so, then the plaintiff's quantum meruit claim may be foreclosed. See *Paffhausen v. Balano*, 1998 ME 47, ¶ 9, 708 A.2d 269, 272 (a claim for quantum meruit is based on the existence of an implied promise where the formal elements of an express contract do not exist). Third, the record does not establish, as a matter of law, the amount of any recovery to which the plaintiff would be entitled, if it succeeds on any of its liability claims. Even if, for example, the plaintiff establishes its claim for quantum meruit, then it must also prove the value of the services it provided to the defendant. *See William Mushero, Inc. v. Hull*, 667 A.2d 853, 855 (Me. 1995). The absence of any consummated resolution of the defendant's claim and the reasons for the plaintiff's withdrawal from representation of the defendant are factors that bear on the value of its legal services and leave that issue in doubt on this record. Similarly, these factors are also relevant to the value of the benefit that the defendant received from the plaintiff's work. *See Paffhausen*, 1998 ME 47, ¶ 7, 708 A.2d at 271 (the measure of damages on a claim for unjust enrichment is "the value of what was inequitably retained").

The entry shall be:

For the foregoing reasons, the plaintiff's motion for summary judgment is denied.

Dated: November 20, 2005

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

2

GILBERT AND GREIF PA VS BRUCE BLACKMER ET AL
UTN:AOCSsr  -2004-0045732                    CASE #:BANSC-CV-2004-00082
------------------------------------------------------------------------
GILBERT AND GREIF PA                                      PL
ATTY GREIF, ARTHUR  Tel# (207) 947-2223
ATTY ADDR:82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339

BRUCE BLACKMER                                           DEF

MAIL ADDR:14 ENTERPRISE DR DEDHAM ME 04429

ONE BEACON INSURANCE CO PSJ  + Northun Assurance Co      DEF
ATTY LANHAM, SAMUEL W.  JR Tel# (207) 942-2898
ATTY ADDR:470 EVERGREEN WOODS BANGOR ME 04401




M=More, Space = Exit:M

Select the EXIT KEY for page selection line.

STATE OF MAINE                         SUPERIOR COURT
PENOBSCOT, SS.                         CIVIL ACTION
                                       Docket No. CV-04-82

                                       Jl H ᵖₑₙ-ᵃᵃⱼₒᵘ

                                                        ┌─────────────────────┐
                                                        │ FILED & ENTERED     │
Gilbert & Greif, P.A.,                                  │ SUPERIOR COURT      │
        Plaintiff                                       │                     │
                                                        │   FEB 0 6 2006      │
                                                        │                     │
                                                        │ PENOBSCOT COUNTY    │
        v.                             Decision and Judgment └───────────────────┘


Bruce R. Blackmer,
        Defendant


        Hearing on the claims of Gilbert & Greif, P.A., against Bruce R. Blackmer was

held on December 22, 2005.[1] The plaintiff appeared through counsel, and the defendant

proceeded pro se. For the reasons stated below, the court concludes that Gilbert & Greif

is entitled to judgment against Blackmer pursuant to their contingency fee agreement.

        In October 1996, Blackmer sustained a fire loss and, representing his own

interests, pursued recovery of proceeds from applicable insurance policies, one of which

was a Commercial Union policy of roughly $200,00. As of 4 days prior the expiration of

the period of limitations governing claims on insurance policies, Blackmer had received

approximately $132,000 from CU. At that point, with time for legal action running out,

Blackmer hired Gilbert & Greif to represent his interests. Blackmer and the firm, through

one of its attorneys, Charles E. Gilbert, III, entered into a contingency fee agreement, *see*

plaintiff's exhibit 2, and Gilbert filed suit on Blackmer's behalf in Superior Court. The

parties to that action subsequently entered into an arbitration agreement, which Blackmer

---

[1] Gilbert & Greif's complaint also alleged claims against two other parties, One Beacon
Insurance Company and Northern Assurance Company of America. The court entered
summary judgment in favor of the two carriers, leaving only Gilbert & Greif's claims
against Blackmer for trial.

1

and Gilbert signed. *See* defendant's exhibit 2.[2] Although the agreement identified eight areas that would be treated as the subject of the arbitration proceeding, it also recited "the express intent of the Arbitration Parties that this arbitration resolve all issues that were raised, or that could have been raised, in the pending litigation." The evidence reveals that Blackmer meticulously reviewed all documents relating to the prosecution and resolution of his claims, and from this the court concludes that he was fully aware of the comprehensive scope of the arbitration. Further, the court credits Gilbert's testimony that the enumerated issues to be submitted to arbitration constituted all of the issues that remained pending in the lawsuit as of the time of that arbitration. Thus, the scope of the enumerated issues was co-extensive with the more general language noted above. Then, in addition to the arbitration agreement itself, the parties entered into a separate high/low agreement that they did not disclose to the arbitrator.

After the parties had begun the arbitration process, they asked the arbitrator for her preliminary view of the case. With that information in hand, the parties then proceeded to engage in direct negotiations, which, after preliminary discussions and exchanges of draft agreements, culminated in a mediation session held on March 21, 2003. There is no dispute that Blackmer agreed to accept a total of $51,629.55 to satisfy his claims on the insurance policies. (In fact, Blackmer and CU agreed to this figure by early February, and CU had already prepared checks in that cumulative amount. *See* plaintiff's exhibit 5 (checks dated February 2, 2003).) With the amount of the payment largely behind them, however, the parties addressed two other material issues.

First, CU was providing a defense to Blackmer on a third party's pending claim against him arising from the fire loss. (The third party owned property stored on Blackmer's property that was damaged or destroyed in the fire.) Initially, CU wanted to limit the extent of its duty to indemnify Blackmer for that loss. Language that would have limited CU's coverage for the third party claim was eliminated from a draft agreement. Further, the best available evidence reveals that during the March 21 mediation session, Gilbert contacted the attorney representing Blackmer in the third party claim and learned that the case had been settled. Blackmer received confirmation of the

---

[2] Blackmer marked his exhibits as "BB exhibit." The court will refer to them here as "defendant's exhibit."

disposition on April 2. CU's settlement on Blackmer's behalf of the third party's claim made the limitation in the earlier drafts of the agreement unnecessary. These events took care of this issue that had been of concern to Blackmer.

Second, Blackmer felt strongly that CU had not dealt with him fairly when he attempted to settle the fire loss claim. He particularly believed that he had a claim against the attorney who had represented CU. There thus arose an issue of who would be protected by the release that Blackmer would be required to execute as part of a settlement on his claim under CU's insurance policy. Blackmer and CU agreed to limit the universe of releasees, so that is would not encompass "agents" or "representatives" of the carrier. This would leave Blackmer free to pursue claims against persons such as the attorney whom he felt had acted improperly. On a similar note, the terms of the agreement would not restrict Blackmer's opportunity to refer the matter to the Maine Department of Insurance for an administrative inquiry into the way CU adjusted the fire loss claim.

Therefore, Gilbert had secured settlement terms that fully addressed Blackmer's goals: payment from CU of the amount agreed by the parties; full indemnification for the third party's claim; and reservation of his right to proceed against CU's former attorney.

The parties' agreement ultimately was memorialized in writing. *See* plaintiff's exhibit 3. CU issued two checks with a combined payment of $51,629.55, and a CU representative signed the agreement on behalf of the company. (Due to his distrust of CU, Blackmer insisted that CU sign it before he would.) On April 1, Gilbert faxed the release to Blackmer. Two days later, Blackmer called Gilbert and told him that he would not sign the release because he still wanted to pursue a bad faith claim against CU. Gilbert unsuccessfully attempted to persuade Blackmer to proceed with the settlement as the parties had agreed at the March 21 mediation. *See* plaintiff's exhibit 10. He also advised Blackmer that in his view, he was entitled to payment of attorneys fees as provided in the contingency fee agreement even if Blackmer were to repudiate the settlement agreement. *Id.*

Because Blackmer continued in his refusal to close the settlement, Gilbert filed a motion to withdraw as Blackmer's attorney of record in the Superior Court fire loss action. Although the motion itself did not specify the basis for withdrawal (probably

3

because it could not include that information without requiring disclosure of confidential communications), Gilbert filed it because he anticipated that CU would file a motion to enforce the settlement reached in March and because he believed that Blackmer's motivation to perpetuate the lawsuit against CU, when the parties had reached a settlement, could result in a violation of his attorney's oath if he continued as Blackmer's counsel:[3] as Gilbert understood Blackmer's reasoning, Blackmer wanted to continue pursuit of his claim against CU, even though the fire loss was resolved, as a form of harassment because Blackmer felt that CU treated him unfairly during his attempts to realize the insurance proceeds.

In fact, CU did file a motion to enforce the settlement. The court denied the motion, meaning that the case remained unresolved and pending in court.[4] Blackmer asked Gilbert to step back in as his attorney, but Gilbert refused. Blackmer then

---

[3] Among other things, by subscribing to the oath, an attorney certifies that he will not promote a groundless or false suit and that he "will delay no man for lucre or malice. . . ." *See* 4 M.R.S.A. § 806.

[4] Blackmer relies on the court's order denying CU's motion to enforce the putative settlement agreement. In its order, the court found that Blacker and CU did not have "a meeting of the minds" because CU had failed to prove that Blackmer intended the settlement to embody a comprehensive resolution of all claims he wanted to pursue against CU. *See* defendant's exhibit 7. Although this court order was admitted into evidence without objection, it has no binding effect against Gilbert & Greif here. A party is collaterally estopped from relitigating issues (which, in essence, is how Blackmer wishes evidence of the court's findings to have) only if, among other things, the party against whom estoppel is asserted was a party to the underlying proceeding and thus had the opportunity to participate in the process that resulted in the finding, and where the estopped party had a fair opportunity and incentive to litigate the issue in that prior proceeding. *See, e.g., Cline v. Maine Coast Noric*, 1999 ME 72, ¶ 9, 728 A.2d 686, 688; *Chandler v. Dubey*, 378 A.2d 1096, 1098 (Me. 1977). Here, Gilbert & Greif was not a party in the action where the court adjudicated CU's motion to enforce, and thus the firm had no opportunity to litigate the issue. Additionally, because of the attorney-client privilege, Gilbert was barred from testifying about his confidential communications with Blackmer. Those conversations bear significantly on the question of whether in fact Blackmer and CU had reached a settlement. Because of the invocation of the privilege – the legitimacy of which is not questioned here --, the proponent of the settlement (which was CU in the prior proceeding, and which is Gilbert & Greif here) was unable to present material evidence. For these reasons, the court attaches no weight to the court's earlier finding that Blackmer had not come to terms with CU.

proceeded pro se and resumed negotiations directly with CU's attorney (who was a different attorney than the one against whom Blackmer wished to preserve his rights). Blackmer made a demand of $110,000, and then lowered it to approximately $60,000. In November 2003, he ended up settling with CU for the same amount ($51,629.55) that Gilbert had secured on his behalf eight months earlier and for the identical terms set out in the settlement agreement and release that Blackmer refused to sign in April. *See* plaintiff's exhibits 4 and 6. Blackmer instructed CU's counsel to issue the checks directly to him, without the inclusion of Gilbert & Greif as a co-payee. CU did so. Gilbert sought recovery of the amount he claimed was due to Gilbert & Greif pursuant to the contingency fee agreement, but Blackmer refused to pay the firm.[5] Gilbert & Greif then brought this action to recover the amount that would be due under the fee agreement, namely, $17,541.04.[6]

Based on these findings, the court concludes that Gilbert & Greif fully performed its obligations under the parties' agreement. This conclusion flows from the specific findings noted above, which amount to a more generalized finding that the law firm represented Blackmer in his claim against Commercial Union and Northern Assurance for the unpaid portion of the fire loss and that the firm did so through the resolution of that claim. On March 21, Blackmer agreed to accept a sum certain in satisfaction of his allegation that the carriers were liable for the fire loss. He also agreed with the carriers to specific conditions of that settlement, namely, that certain persons involved in the claims process would not be released, and that CU's obligations to him on the third party claim would not be affected the settlement.

---

[5] Blackmer tendered payment for $331.19, which is the net amount of disbursements that Gilbert & Greif had incurred in the action against CU. *See* note 6 *infra*. However, Gilbert refused to accept that payment because Blackmer conditioned any such acceptance as payment in full of the amount he owed to the firm rather than without prejudice to its right to pursue the balance.

[6] The amount set out in the text is the sum of one-third of the settlement amount ($17,209.85, which is one-third of $51,629.55) and net costs of $331.19. The gross amount of disbursements was actually $696.43. However, this calculation gives Blackmer credit toward those gross costs for an amount applied from another matter. *See* defendant's exhibit 5.

Blackmer contends that the mediation and the agreement reflected in the document he declined to sign in early April did not address and dispose of all issues relating to the fire loss claim. However, the mediation was spawned directly by the arbitration that, although framed in terms of eight discrete issues, was comprehensive. Those eight issues, as Gilbert testified, consisted of all outstanding issues in the pending Superior Court action. Further, the arbitration agreement included a provision noted above that had the effect of an integration clause: it brought into the arbitration process all issues that were or could be raised in the court action. Blackmer testified that he wanted to posture the case in a way that would support an administrative grievance against CU by proving that CU had acted in bad faith.[7] Nothing in the present record, however, suggests that such a claim would be proper, much less successful, in light of the parameters to insured's claims found in cases such as *Marquis v. Farm Family Mutual Insurance Co.*, 628 A.2d 644 (Me. 1993). Further, the evidence does not demonstrate that a claim of bad faith was part of the work with which Gilbert & Greif was charged. And in any event, the settlement left Blackmer free to pursue the matter administratively (something he did not do). Thus, Gilbert steered the fire loss claim to a resolution that Blackmer authorized, and Gilbert did not withdraw until well after Blackmer had rejected the terms to which he had previously agreed and indicated to Gilbert that he wanted to prolong the case in a way that amounted to a breach of his own obligations under the contract.

Blackmer then argues that Gilbert & Greif is not entitled to recover its attorneys fees because, he contends, Gilbert terminated his role as his (Blackmer's) attorney prior to the time he and CU came to terms, and because the ultimate resolution of the case is attributable to his own efforts. Neither aspect of this argument is supported by the evidence. First, in both a formal and substantive way, Gilbert remained as Blackmer's attorney until well after Gilbert presented him with a memorialization of the terms that had been acceptable to him a short time previously. Gilbert's letter of April 3 makes clear that he still represented Blackmer as of that date, undermining Blackmer's

---

[7] At trial, Blackmer testified several times that, to him, his primary objective of the lawsuit against CU was to establish that they had acted in bad faith. This, he hoped, would establish the predicate to administrative sanctions imposed by the Department of Insurance.

6

testimony that Gilbert quit as his lawyer at or shortly after the March 21 mediation session. Further, it is plain that the terms of the settlement that Blackmer ultimately accepted in late 2003 were identical to those that Blackmer (through Gilbert) had worked out in March. After Gilbert withdrew as Blackmer's attorney, Blackmer attempted to obtain more settlement money than had been available to him when Gilbert still was his lawyer. Those efforts, however, were completely unsuccessful, and Blackmer eventually settled the case on the precise terms that Gilbert had achieved in March. This establishes that the settlement of the fire loss claim falls entirely within the scope of the parties' agreement and is not something that developed after Gilbert had withdrawn as Blackmer's counsel.[8]

For these reasons, the court concludes that Gilbert & Greif fully performed under the parties' contract, that Blackmer committed a breach of the contract, and that he is liable for the amount due under the contract.

The entry shall be:

For the foregoing reasons, judgment is entered for the plaintiff in the amount of $17,541.04, plus pre-judgment interest at the annual rate of 4.28%, post-judgment interest at the annual rate of 10.36%, and its costs of court.

Dated: February 2, 2006

Justice/Maine Superior Court

---

[8] Gilbert & Greif correctly argues that if the settlement of the case does not support its claim under the actual terms of the parties' contract, then it could recover for quantum meruit, because if the legal services provided by the firm can only be analyzed outside of the parameters of the parties' express contract, then there arose a situation where the firm rendered services to Blackmer, Blackmer knew of and consented to those services, and under the circumstances it was reasonable for Gilbert & Greif to expect payment for those services. *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269, 271. If Gilbert & Greif's express contract claim fails because Gilbert did not see the case through to its conclusion (an argument that the court rejects), then its implied contract claim would prevail. This would result in a substantially larger award of damages than Gilbert & Greif is entitled to recover under its express contract claim, because the measure of damages for quantum meruit is the value of the services provided to the obligee. *See William Mushero, Inc. v. Hull*, 667 A.2d 853, 855 (Me. 1995). The evidence reveals that the value of Gilbert & Greif's legal services exceeded the amount to which it is entitled under the contingency fee agreement.

7

GILBERT AND GREIF PA - PLAINTIFF

Attorney for: GILBERT AND GREIF PA
ARTHUR GREIF   - RETAINED 04/28/2004
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339


vs
BRUCE BLACKMER   - DEFENDANT
14 ENTERPRISE DR,
DEDHAM ME 04429
ONE BEACON INSURANCE CO PSJ - DEFENDANT
7070 SABLE OAKS DRIVE,
SOUTH PORTLAND ME 04106
Attorney for: ONE BEACON INSURANCE CO PSJ
SAMUEL W LANHAM JR - RETAINED 05/19/2004
CUDDY & LANHAM
470 EVERGREEN WOODS
BANGOR ME 04401

NORTHERN ASSURANCE COMPANY OF AMERICA PSJ - DEFENDANT
7070 SABLE OAKS DRIVE,
SOUTH PORTLAND ME 04106
Attorney for: NORTHERN ASSURANCE COMPANY OF AMERICA PSJ
SAMUEL W LANHAM JR - RETAINED 05/19/2004
CUDDY & LANHAM
470 EVERGREEN WOODS
BANGOR ME 04401

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2004-00082

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 04/28/2004

## Docket Events:

04/28/2004 FILING DOCUMENT - COMPLAINT FILED ON 04/28/2004
          EXHIBIT A ATTACHED.

04/28/2004 Party(s):  GILBERT AND GREIF PA
          ATTORNEY - RETAINED ENTERED ON 04/28/2004
          Plaintiff's Attorney: ARTHUR GREIF

04/28/2004 Party(s):  BRUCE BLACKMER
          SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 04/28/2004
          BY PLAINTIFF.

04/28/2004 Party(s):  BRUCE BLACKMER
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 04/23/2004
          OFFICER'S RETURN OF SERVICE AS TO DEFENDANT BRUCE BLACKMER.

04/28/2004 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 04/28/2004
          TO PLAINTIFF'S ATTORNEY.

05/05/2004 Party(s):  BRUCE BLACKMER